14 A.3d 750 (2010)
418 N.J. Super. 481
STATE of New Jersey, Plaintiff,
v.
John HENRY, Defendant.
Municipal Appeal 2010-16
Superior Court of New Jersey, Law Division, Mercer County.
Decided October 20, 2010.
*752 Mary Sparkman and John M. Jingoli, Jr., Assistant Prosecutors, for plaintiff (Joseph Bocchini, Mercer County Prosecutor, attorney).
Robert E. Ramsey, Lawrenceville, for defendant (Donini & Ramsey, attorneys).
OSTRER, J.S.C.

Introduction
In this municipal appeal, defendant seeks de novo review of the custodial sentence imposed after he pled guilty to driving under the influence ("DUI") of intoxicating liquor with a blood alcohol level ("BAC") of .30. It was defendant's third DUI conviction, but the court treated him as a second-offender under the so-called "step down" provision. N.J.S.A. 39:4-50(a)(3). The municipal court sentenced defendant to sixty days in jail, but suspended thirty days conditioned on his performing thirty days of community service and completing forty-eight hours at the Intoxicated Driver Resource Center ("IDRC").
Defendant argues that a court may not consider defendant's extremely high BAC as an aggravating factor in sentencing because that would entail impermissibly "double-counting" an element of the offense; and no other aggravating factors justify a custodial term beyond the mandatory minimum two days. This court disagrees on both points. First, although it is well settled that a court may not use the same evidence both for sentencing purposes and to establish an element of the offense, it is likewise well settled that a court may consider it an aggravating factor when a defendant's behavior far exceeds what is necessary to satisfy an element of an offense. Second, the court concludes that other aggravating factors exist. Although the step-down provision shields defendant from the harsh penalties imposed on third-time offenders, the court may nonetheless consider the defendant's two prior convictions as aggravating factors. Defendant's prior criminal record also is an aggravating factor. Nonetheless, in light of mitigating factors discussed below, the court imposes a sentence of one year probation, subject to conditions including fourteen days in jail and intensive alcohol treatment.

Facts and Procedural History.
Defendant entered an unconditional plea of guilty to driving under the influence. According to the police report, on November 3, 2009, shortly before eight o'clock in the morning, defendant turned left on to Emanuel Street in Hamilton Township without signaling.[1] (Defendant was apparently on his way home as he lived on Emanuel Street.) He then pulled onto the *753 wrong side of the street at the corner, and came to a stop with the rear bed of his pickup truck partially extending into Cedar Lane, obstructing traffic. Officers performed a motor vehicle stop. They observed two empty 1.75 liter bottles of vodka in the passenger compartment. Defendant smelled of alcohol. He performed poorly on field sobriety tests and was arrested. Defendant was so intoxicated that he was unable to control basic bodily functions. At headquarters, police administered the Alcotest, which measured a .30 BAC. He was later transported to a hospital because the police were concerned about his health, given his high BAC.
In his allocution before municipal court, defendant explained that he was drinking vodka and cranberry juice at home by himself "all night." (At a sentencing hearing before this court, the defendant insisted that he did not drink in the vehicle, notwithstanding the presence of the empty vodka containers.) At around 7:30 a.m., he claimed, his mother asked him to get medicine for her at a nearby store. So, he allegedly left home to run that errand. Defendant did not contest the Alcotest's accuracy, and admitted that he exercised poor judgment "drinking all day into the night and getting into a vehicle for any reason."
According to the defendant's driver abstract, he was convicted on June 2, 1997, of driving under the influence on February 5, 1997, and again two days later, on February 7, 1997. The February 5, 1997, incident also involved a conviction of consumption while operating a vehicle. N.J.S.A. 39:4-51a. According to the abstract, the defendant also failed to participate, in a timely way, in the mandated counter-measures program.
The municipal court in this case suspended defendant's license for two years, and imposed a sixty-day jail term, thirty days of which was suspended, conditioned on completing forty-eight hours of IDRC and thirty days of community service. The court required an ignition interlock for three years. (Ignition interlock was discretionary before enactment of L.2009, c. 201, § 1, which made it mandatory effective January 14, 2010.) The court also imposed mandatory monetary penalties and surcharges, and the maximum fine of $1000, the range being $500 to $1000. N.J.S.A. 39:4-50(a)(2).
Before hearing this municipal appeal, this court obtained defendant's presentence report ("PSR") in connection with a conviction for possessing a sawed-off shotgun. Defendant was sentenced on June 20, 2003, to three years' probation. Probation was conditioned upon defendant submitting to a substance abuse evaluation and following its recommendations. Defendant served three days in custody. According to the PSR, defendant agreed with the official version of the offense, which stated that a neighbor was concerned about defendant's well-being and called the police when she saw defendant's vehicle running unoccupied in defendant's driveway. When police entered defendant's home to investigate, they found him intoxicated. They also found the shotgun in the home. Defendant said he was unaware that he had left his truck running.
In his statements before this court, defendant stated that he was a life-long alcoholic.[2] He is sixty-three years old and *754 no longer employed. His health is compromised, and he has recently been treated for circulatory issues. He stated that he lives with his eighty-seven year old mother, who is also in declining health, and suffering from impaired short-term memory and restricted mobility. She has difficulty navigating stairs without assistance, so her bed was moved to the first floor living area of the home. Defendant is principally responsible for assisting his mother.

Discussion.
The sole issue before the court is the custodial aspect of defendant's sentence. The court will first review the factors that it may generally consider in deciding whether to impose a discretionary jail sentence for a motor vehicle violation. The court will then address specifically whether it may consider as an aggravating factor a defendant's extremely high BAC. The court will then apply its conclusions to the facts and impose a custodial sentence, as a condition of probation.

Factors Governing Imposition of Custodial Sentence for DUI.
The drunk driving statute does not prescribe factors that a court must consider in deciding whether to incarcerate a defendant for DUI. This court therefore must decide, as a threshold matter, what factors to apply in determining whether to impose a term of incarceration, and if so, for how long. The court concludes that it should apply, with appropriate tailoring, the aggravating and mitigating factors prescribed by the Criminal Code for sentencing of offenses and crimes, N.J.S.A. 2C:44-1. Even if the factors are not mandated, they provide appropriate guides for the court's exercise of discretion.
The DUI laws grant significant sentencing discretion to municipal courts and the Law Division on de novo appeals. A court must decide first whether to incarcerate at all in the case of first offenders. See N.J.S.A. 39:4-50(a)(1)(i) and (ii) (allowing for first offender "in the discretion of the court, a term of imprisonment of not more than 30 days"). For second offenders, the court must also make an "in or out" decision as it relates to jail. While the law mandates at least forty-eight consecutive hours of custody for second offenders, those hours may be served in treatment; the court retains discretion to impose a jail term of up to ninety days. N.J.S.A. 39:4-50(a)(2) (stating that second offenders "shall be sentenced to imprisonment for a term of not less than 48 consecutive hours, which shall not be suspended or served on probation, nor more than 90 days"); N.J.S.A. 39:4-50(a)(3) (stating that that imprisonment for first or second offender can be served in an "inpatient rehabilitation program or to an Intoxicated Driver Resource Center or other facility approved by the chief of the Intoxicated Driving Program Unit in the Department of Health and Senior Services"). The law mandates a 180-day sentence for third offenders, but the court retains discretion to allow half of that to be served in inpatient treatment. N.J.S.A. 39:4-50(a)(3).
The Criminal Code requires a sentencing court to consider specified aggravating factors and mitigating factors in imposing sentence for someone "convicted of an offense." N.J.S.A. 2C:44-1. The court in State v. Walsh, 236 N.J.Super. 151, 156-57, 564 A.2d 901 (Law Div.1989), declined to make an "aggravating-mitigating analysis" in sentencing a defendant for DUI. The court reasoned that a motor vehicle violation *755 does not fall within the Code's definition of an "offense," which encompasses crimes, disorderly persons offenses, and petty disorderly persons offenses. N.J.S.A. 2C:1-14(k). The court outlined no alternative structure or factors to guide the exercise of its sentencing discretion.
However, unfettered sentencing discretion violates notions of due process and fairness. "Random and unpredictable sentencing is anathema to notions of due process." State v. Moran, 202 N.J. 311, 326, 997 A.2d 210 (2010). "We have long recognized that `there can be no justice without a predictable degree of uniformity in sentencing.'" Ibid. (quoting State v. Hodge, 95 N.J. 369, 379, 471 A.2d 389 (1984)). The Supreme Court has set standards for the exercise of sentencing discretion to assure uniformity. Ibid. Consequently, the Court in Moran directed courts to consider specific factors in determining whether to impose a license suspension under N.J.S.A. 39:5-31.
Although the court rules on municipal court sentencing require municipal courts to balance aggravating and mitigating factors as required by the Criminal Code, they apparently do not require that balancing in DUI cases. Rule 7:9-1(b) requires a municipal court to "state its reasons for imposing ... [a] sentence, including its findings respecting the criteria prescribed by N.J.S.A. 2C:44-1 to 2C:44-3 for withholding or imposing imprisonment, fines or restitution. The court shall also state its factual basis for its finding of particular aggravating or mitigating factors affecting sentence." However, the Supreme Court in Moran apparently read Rule 7:9-1(b) to apply only to disorderly persons and petty disorderly persons offenses. In support of its direction that courts articulate reasons for suspending licenses for motor vehicle violations, the Court cited the rule as indirect authority, noting that the rule "requir[es] [a] municipal court to state reasons for sentencing in disorderly-person- and petty-disorderly-person-offense cases." State v. Moran, supra, 202 N.J. at 329-30, 997 A.2d 210. Moreover, the court in Walsh concluded that a predecessor to the rule, in importing the N.J.S.A. 2C:44-1 criteria, also imported the limitation that they apply only to offenses. 236 N.J.Super. at 156-57, 564 A.2d 901.
Defendant suggests that this court apply the factors that the Supreme Court outlined in Moran for deciding whether to suspend driving privileges under N.J.S.A. 39:5-31. In many respects, those generally coincide with the criteria in N.J.S.A. 2C:44-1. However, the Moran factors are not as extensive as the factors in N.J.S.A. 2C:44-1, particularly as they relate to mitigating circumstances. (In an appendix, the court links each Moran factor to a Code factor. N.J.S.A. 2C:44-1.)
Additional factors not listed in Moran could be relevant to a DUI sentencing. For example, the factors that "the defendant did not contemplate that his conduct would cause or threaten serious harm," N.J.S.A. 2C:44-1(b)(2), and "[t]here were substantial grounds tending to excuse or justify the defendant's conduct, though failing to establish a defense," N.J.S.A. 2C:44-1(b)(4), might apply in a case where a person was unaware that a small amount of alcohol would interact with a new prescription medicine. Other factors that could apply to DUI cases include: "[t]he defendant is particularly likely to respond affirmatively to probationary treatment," N.J.S.A. 2C:44-1(b)(10); "[t]he willingness of the defendant to cooperate with law enforcement authorities," N.J.S.A. 2C:44-1(b)(12); and "[t]he conduct of a youthful defendant was substantially influenced by *756 another person more mature than the defendant." N.J.S.A. 2C:44-1(b)(13).
In the final analysis, this court need not find that the Criminal Code's sentencing factors are mandated in order to apply them in this case. The court may not exercise its sentencing discretion arbitrarily. The Code's sentencing factors provide a comprehensive structure for the court's sentencing decision. Where appropriate, the factors can be molded to fit a DUI case. For example, "prior criminal record and the seriousness of the offenses of which he has been convicted," N.J.S.A. 2C:44-1(a)(6), does not include a conviction for DUI, which is not an offense. State v. Radziwil, 235 N.J.Super. 557, 575-76, 563 A.2d 856 (App.Div.1989), aff'd o.b., 121 N.J. 527, 582 A.2d 1003 (1990). However, a record of prior motor vehicle violations is a relevant factor in sentencing a defendant who has committed another significant motor vehicle violation. See State v. Moran, supra, 202 N.J. at 329, 997 A.2d 210 (stating that a court considering license suspension should consider "the number, seriousness, and frequency of prior infractions").
Potential incarceration for first and second DUI offenders equals or exceeds the potential terms for petty disorderly persons offenders; and sentences for third offenders equals that for disorderly persons offenders. See N.J.S.A. 2C:43-8 (petty disorderly persons offense subject to a term of thirty days, and disorderly persons offense subject to a term of six months). The court is unaware of a compelling reason why the Code's applicable criteria for withholding or imposing imprisonment for disorderly persons and petty disorderly persons should not apply to DUI violators facing comparable terms of incarceration. Therefore, the court shall apply, as appropriately tailored, the aggravating and mitigating factors in N.J.S.A. 2C:44-1, plus any additional relevant factors, in deciding whether to impose a sentence of imprisonment, and the length of such sentence.

Consideration of Extremely High BAC Level is Not Double-Counting.
Defendant argues that consideration of his extremely high BAC level would constitute impermissible double-counting. This court disagrees. It is well settled that a court may not consider as an aggravating factor in sentencing a fact that constitutes an element of the offense. See, e.g., State v. Kromphold, 162 N.J. 345, 353, 744 A.2d 640 (2000) (reviewing cases applying "prohibition against using evidence both for sentencing purposes and to establish an element of an offense"); State v. Yarbough, 100 N.J. 627, 633, 498 A.2d 1239 (1985), cert. denied, 475 U.S. 1014, 106 S.Ct. 1193, 89 L.Ed.2d 308 (1986).
However, it is likewise well settled that a court may consider as an aggravating factor facts reflecting that a defendant exceedingly satisfied a quantity-related element of an offense. For example, in State v. Varona, 242 N.J.Super. 474, 491, 577 A.2d 524 (App.Div.), certif. denied, 122 N.J. 386, 585 A.2d 389 (1990), the sentencing court considered that the defendant possessed seven times the amount of cocaine required as an element of the offense. The appellate court rejected defendant's double-counting argument, stating that the court may consider as an aggravating factor "that defendant had far more drugs in his possession than needed to constitute a first degree crime." Ibid. See also State v. Toro, 229 N.J.Super. 215, 226, 551 A.2d 170 (App.Div.1988) ("We agree that "the nature and circumstances" of a drug offense include the amount of drugs involved"), certif. denied, 118 N.J. 216, 570 A.2d 973 (1989). A court may also consider aggravating facts showing that defendant's behavior extended to the *757 extreme reaches of the prohibited behavior. See, e.g., State v. Taylor, 226 N.J.Super. 441, 453, 544 A.2d 883 (App.Div.1988) (consideration of "extreme youth of the [sexual assault] victim" was not double-counting, as statute covered victims under thirteen years old and victim was four).
Defendant misreads State v. Kromphold to bar this court's consideration of defendant's extreme BAC level. The Court in Kromphold held that it was double-counting to consider BAC level in an aggravated assault case where the extreme BAC level was itself a basis for finding the necessary recklessness or extreme indifference to the value of human life. 162 N.J. at 355-56, 744 A.2d 640. Kromphold does not bar this court from considering a DUI defendant's extreme BAC in sentencing because the extreme level of BAC is not an element; only the minimum .08 BAC level is an element of the offense.
Lastly, extreme BAC should be considered an aggravating factor because empirical research demonstrates that drivers with high BAC levels pose a substantially higher risk of crashes than drivers with unlawful, but lower, levels. See, e.g., Paul L. Zador, Sheila A. Krawchuk & Robert B. Voas, "Relative Risk of Fatal Crash Involvement by BAC, Age and Gender," Nat'l Highway Traffic Safety Admin. (April 2000). Within virtually every age and gender grouping, "relative risks of fatal injury and fatal crash involvement both steadily increased with increasing driver BAC...." Id. at 9. (The only exception pertains to comparisons of drivers over twenty-one at zero BAC and near zero BAC.) A male driver over thirty-five years old in the "over .15 BAC" category drivers in the category actually averaged.22 BACwas seven times more likely to be involved in a crash than a driver with a BAC between .10 and .149, and fourteen times more likely than a driver with a BAC between .08 and .099. Id. at 17, Table 6.6. Indeed, a fifty-percent increase in BAC, from .12 to .18, increases the risk of a crash roughly five-fold. Id. at 8, Figure 2.
In short, ignoring such dramatic differences in the nature and risk of a drunk driver's offense would violate the policy of our State's sentencing law, which promotes sentences based upon the offense. See State v. Roth, 95 N.J. 334, 355, 471 A.2d 370 (1984) ("the overall thrust of the new Code ... [is] its focus upon the gravity of the offense and not the blameworthiness of the offender"). Although drivers at .08 BAC and .30 BAC both satisfy the BAC element of N.J.S.A. 39:4-50, the driver with .30 BAC has committed a more serious offense by creating a substantially greater risk to public safety. That should be deemed an aggravating factor in sentencing.

Principles Applied
The court finds several aggravating factors in this case. "The nature and circumstances of the offense," N.J.S.A. 2C:44-1(a)(1), are aggravating. As discussed above, the level of defendant's BAC was extraordinarily high, and posed a significantly greater risk of harm to the public than that posed by an offender at the statutory minimum level. The risk that the defendant will re-offend is also an aggravating factor. N.J.S.A. 2C:44-1(a)(3). The defendant is an untreated alcoholic with a propensity to drink to excess and to drive. As a three-time offender, he poses a greater risk of offending yet again than someone who has offended fewer times. "The more DWI convictions an offender has, the greater the likelihood that the offender will re-offend." William Brunson & Pat Knighten, Strategies for Addressing the DWI Offender: 10 Promising Sentencing Practices, Nat'l Highway Traffic *758 Safety Admin. (Mar. 2004), at 5. According to one study, "each prior DWI conviction increases an offender's recidivism rate by 10 percent per year." Ibid.
His record of DUI offenses, as well as his upper-court conviction for possessing a prohibited firearm, are aggravating factors. Cf. N.J.S.A. 2C:44-1(a)(6) ("extent of defendant's prior criminal record and the seriousness of the offense of which he has been convicted"). A mature man of sixty-three, the defendant continues to re-offend. Although defendant qualified for "step-down" treatment because more than ten years intervened between his second and third DUI, the court finds that it may still consider the fact that this is defendant's third DUI. As noted above, as a three-time offender, he poses a greater risk of re-offending than a person with two offenses. Moreover, the ten-year interval in this case is not reflective of any sustained period of sobriety; defendant admitted he was a life-long alcoholic, and his intervening upper-court conviction involved intoxication. Lastly, the need to deter is an aggravating factor. N.J.S.A. 2C:44-1(a)(9). The DUI sentencing regime prescribes escalating consequences for repeat offenders who have been undeterred by lesser sanctions.
However, the court finds several significant mitigating factors. The defendant's persistent alcoholism is a factor that the court considers mitigating. Although this does not justify or excuse the defendant's conduct, it explains it. Cf. N.J.S.A. 2C:44-1(b)(4) ("[t]here were substantial grounds tending to excuse or justify the defendant's conduct, though failing to establish a defense"). See also N.J.S.A. 26:2B-7 (expressing the State's policy to make available to alcoholics "a continuum of treatment in order that they may lead normal lives as productive members of society"). This court recognizes that defendant cannot simply turn off his alcoholism. Yet, he has the responsibility to seek treatment diligently and consistently. He is subject to punishment not because of his alcoholism, but because he was driving while intoxicated.
The defendant's willingness to cooperate is another mitigating factor. He was cooperative when arrested, and he cooperated by entering a plea. See N.J.S.A. 2C:44-1(b)(12) ("willingness ... to cooperate with law enforcement authorities"). The defendant will also perform community service, as mandated by law. See N.J.S.A. 2C:44-1(b)(6) (mitigating factor if defendant pays restitution or performs community service).
As for defendant's argument that it is a mitigating factor that no one was injured, the court declines to find that as a significant mitigating factor. Where "defendant's conduct neither caused nor threatened serious harm," the court may consider that to be a mitigating factor. N.J.S.A. 2C:44-1(b)(1). In this case, although defendant's conduct did not cause serious harm, it threatened it.
Finally, and significantly, the court does find as a mitigating factor the impact of defendant's incarceration on himself and his mother. N.J.S.A. 2C:44-1(b)(11) ("imprisonment of the defendant would entail excessive hardship to himself or his dependents"). Defendant is a mature man with a history of medical problems, although he is not disabled. Moreover, he plays a significant role in caring for his eighty-sevenyear-old mother who has failing memory and restricted mobility. That hardship looms largest among the mitigating factors.
Balancing the aggravating and mitigating factors, the court finds that the aggravating factors predominate. The court weighs heavily the nature and circumstances *759 of the offense, defendant's repetitive offending, and the need to deter. The circumstances warrant a custodial sentence above the mandated two days. Absent the mitigating factors discussed below, the court would sentence the defendant anew to the thirty days' jail imposed by the municipal court.
However, the court also attaches significant weight to the hardship to defendant and his mother. Considering the chronic nature of defendant's alcoholism, imposing a probationary term, conditioned on intensive alcohol treatment, would promote defendant's rehabilitation. If defendant fails to comply, he would be subject to a revocation of probation and re-sentencing to additional incarceration.
The court is authorized by N.J.S.A. 39:5-7 to impose a probationary term.
In any proceeding instituted pursuant to the provisions of this subtitle, except where a mandatory penalty is fixed herein, the magistrate may suspend the imposition or execution of sentence, and may also place the defendant on probation under the supervision of the chief probation officer of the county for a period of not less than six months nor more than one year.
[Ibid.]
Probation may not be imposed instead of the mandatory minimum two day sentence. See State v. Johnson, 42 N.J. 146, 175-76, 199 A.2d 809 (1964) (holding that N.J.S.A. 39:5-7 does not permit suspension of mandatory term of imprisonment); N.J.S.A. 39:4-50 (stating that second offender "shall be sentenced to imprisonment for a term of not less than 48 consecutive hours, which shall not be suspended or served on probation, nor more than 90 days"). However, where probation is conditioned upon service of at least the mandatory fixed penalties and imprisonment, there appears to be no impediment to imposing probation under N.J.S.A. 39:5-7 or N.J.S.A. 39:4-50.
Consequently, the court shall impose a sentence of one year probation, specially conditioned upon fourteen days' incarceration and intensive alcohol treatment, as well as compliance with the IDRC and community service obligations of his municipal court sentence. All other non-custodial aspects of defendant's sentence, which were not the subject of his appeal, shall be included in this court's judgment to avoid any confusion about the complete terms of his sentence.

APPENDIX.

Moran Factor Code Factor
-------------------------------------------------------------------------------------------------------------
"[T]he nature and circumstances of the defendant's "The nature and circumstances of the offense,
conduct, including whether the and the role of the actor therein, including
conduct

posed a high risk of danger to the whether or not it was committed in
public." State v. Moran, supra, 202 N.J. at an especially heinous, cruel, or depraved
329-30. manner." N.J.S.A. 2C:44-1(a)(1) (aggravating
 factor)
-------------------------------------------------------------------------------------------------------------
Whether defendant's conduct "caused physical "The gravity and seriousness of harm inflicted
harm or property damage." Id. at 330. on the victim ..." N.J.S.A. 2C:44-1(a)(2)
 (aggravating factor). "The defendant's conduct
 neither caused nor threatened serious
 harm." N.J.S.A. 2C:44-1(b)(1) (mitigating
 factor).
-------------------------------------------------------------------------------------------------------------
"[T]he defendant's driving record, including "The extent of the defendant's prior criminal
the defendant's age and length of time as a record and the seriousness of the offenses of

*760
licensed driver, and the number, seriousness, which he has been convicted" N.J.S.A.
and frequency of prior infractions." Ibid. 2C:44-1(a)(6) (aggravating factor)
------------------------------------------------------------------------------------------------------------
"[W]hether the defendant was infraction-free "The defendant has no history of prior delinquency
for a substantial period before the most recent or criminal activity or has led a law-abiding
violation." Ibid. life for a substantial period of time
 before the commission of the present offense."
 N.J.S.A. 2C:44-1(b)(7) (mitigating
 factor)
-------------------------------------------------------------------------------------------------------------
"[W]hether the nature and extent of the defendant's "The risk that the defendant will commit
driving record indicates that there another offense." N.J.S.A. 2C:44-1(a)(3) (aggravating
is a substantial risk that he or she will commit factor)
another violation." Ibid.
-------------------------------------------------------------------------------------------------------------
"[W]hether the character and attitude of the "The character and attitude of the defendant
defendant indicate that he or she is likely or indicate that he is unlikely to commit another
unlikely to commit another violation." Ibid. offense." N.J.S.A. 2C:44-1(b)(9) (mitigating
 factor)
-------------------------------------------------------------------------------------------------------------
"[W]hether the defendant's conduct was the "The defendant's conduct was the result of
results of circumstances unlikely to recur." circumstances unlikely to recur." N.J.S.A.
Ibid. 2C:44-1(b)(8) (mitigating factor)
-------------------------------------------------------------------------------------------------------------
"[W]hether a license suspension would cause "The imprisonment of the defendant would
excessive hardship

to the defendant and/or entail excessive hardship to himself or his
dependants." Ibid. dependents" N.J.S.A. 2C:44-1(b)(11) (mitigating
 factor)
-------------------------------------------------------------------------------------------------------------
"[T]he need for personal deterrence." Ibid. "The need for deterring the defendant and
 others from violating the law." N.J.S.A.
 2C:44-1(a)(9) (aggravating factor)
-------------------------------------------------------------------------------------------------------------

NOTES
[1] At sentencing in municipal court, defense counsel argued that the court should consider the absence of injuries, the absence of reckless driving, and defendant's cooperation with police. Although the police report was not marked in evidence, defense counsel asked the municipal court to consider it, stating, "It might be helpful for the Court to have the police report here just to see what the driving conduct was...." This court, therefore, considers that report part of the record subject to de novo review.
[2] The Law Division in a municipal appeal is generally restricted to the record created before the municipal court. See R. 3:23-8(a) (stating that trial of appeal "shall be heard de novo on the record"). The court must sentence a guilty defendant anew, but it may not increase a custodial term. State v. Kashi, 180 N.J. 45, 49, 848 A.2d 744 (2004) (stating that, as a policy matter, "a defendant convicted and sentenced in a municipal court may not be subjected to a greater sentence on appeal"). As part of that new sentencing process, counsel are allowed to address sentencing, and in this court's view, the defendant is entitled to address the court. Likewise, a victim, if any, would be entitled to speak.