45 A.3d 1022 (2012)
426 N.J. Super. 510
STATE of New Jersey, Plaintiff-Respondent,
v.
Diana M. PALMA, Defendant-Appellant.
A-3473-10T3
Superior Court of New Jersey, Appellate Division.
Argued Telephonically November 28, 2011.
Decided June 26, 2012.
*1023 Paul E. Zager, Red Bank, argued the cause for appellant.
Monica do Outeiro, Assistant Prosecutor, argued the cause for respondent (Peter E. Warshaw, Jr., Monmouth County Prosecutor, attorney; Ms. do Outeiro, of counsel and on the brief).
Before Judges LIHOTZ, WAUGH and ST. JOHN.
PER CURIAM.
Defendant Diana Palma appeals from the custodial sentence imposed following her guilty plea to careless driving, contrary to N.J.S.A. 39:4-97. The municipal court judge sentenced defendant to a suspension of driving privileges for ninety days, fines and costs totaling $241, and a fifteen-day jail term. After a trial de novo in the Law Division, the judge imposed the same sentence as determined by the municipal court judge. The sentence was stayed pending appeal. The stay of the license suspension was consensually vacated and is not a subject of this appeal. After reviewing the record, we reverse and remand for resentencing by the Law Division judge.
Defendant's guilty plea arose out of a motor vehicle accident that took place on February 22, 2010, in Red Bank. Defendant was traveling eastbound on Bergen Place, then stopped at a red light at the intersection with Broad Street. After the light turned green, she made a left turn and proceeded northbound on Broad Street. At that time, a motorist in the southbound lane signaled to defendant that she had just hit a pedestrian. Defendant immediately stopped her SUV. Unbeknownst to defendant, she had dragged the pedestrian, who was lodged underneath her car, down Broad Street. Almost *1024 two months later, the victim died of injuries incurred in the accident.
Defendant voluntarily submitted to a blood test, which revealed she was not using intoxicating substances. Defendant also voluntarily produced her cellular phone records, which did not reveal that she was using her cell phone at the time of the accident. There was no evidence defendant intentionally struck the victim or had fallen asleep while driving. There was also no credible evidence defendant had run the traffic signal, exceeded the speed limit, or had acted recklessly. As a result, the State charged defendant with careless driving,[1] to which she entered a plea of guilty.
Defendant raises the following issues on appeal:
POINT I
BEFORE ANYONE IS SENT TO JAIL FOR CARELESS DRIVING CASES, THERE MUST BE A UNIFORM SENTENCING STANDARD TO BIND THE LOWER COURTS; THIS COURT SHOULD REVERSE MS. PALMA'S JAIL SENTENCE.
POINT II
EVEN IF STATE V. HENRY WERE APPLIED TO ALL CARELESS DRIVING, THE SUPERIOR COURT JUDGE DID NOT HAVE A COMPLETE RECORD AND IN ANY EVENT MISAPPLIED THE FACTORS.
POINT III
THE DE NOVO HEARING WAS IMPERMISSBLY TAINTED BY THE MUNICIPAL COURT'S EXPRESSED BIAS AND RELIANCE ON EX PARTE `RESEARCH'; BEFORE MS. PALMA COULD BE SENTENCED TO JAIL FOR CARELESS DRIVING (REGARDLESS OF WHAT STANDARD IS ADOPTED), THE MATTER WOULD HAVE TO BE REMANDED FOR FACT-FINDING BEFORE A DIFFERENT JUDGE, WHETHER IN THE LAW DIVISION OR IN THE MUNICIPAL COURT.
Our scope of review is generally limited. We "consider only the action of the Law Division and not that of the municipal court." State v. Oliveri, 336 N.J.Super. 244, 251, 764 A.2d 489 (App. Div.2001) (citing State v. Joas, 34 N.J. 179, 184, 168 A.2d 27 (1961)). Review in the Law Division is de novo on the record, R. 3:23-8(a).[2] The Law Division must sentence a guilty defendant anew, and may not increase a custodial term imposed by the municipal court. State v. Kashi, 180 N.J. 45, 49, 848 A.2d 744 (2004) (stating that, as a policy matter, "a defendant convicted and sentenced in a municipal court may not be subjected to a greater sentence on appeal").[3] We are limited to determining whether the Law Division's de novo *1025 findings "could reasonably have been reached on sufficient credible evidence present in the record." Johnson, supra, 42 N.J. at 162, 199 A.2d 809.
Although we do not ordinarily review the actions of the municipal court judge, we must do so in this case because defendant argues that the municipal court judge's personal views infected the record, including his factual determinations, which the Law Division relied upon to some extent. See State v. Perez, 356 N.J.Super. 527, 533, 813 A.2d 597 (App.Div.2003) ("A trial de novo on the record, based on acceptance of the credibility determinations of a judge who ought to have recused himself, is inconsistent with due process."). We do not need to address, as argued by defendant, whether the record reflects actual bias with respect to the decision made by the municipal court judge.
Turning to defendant's arguments raised in Point III with respect to the comments by the municipal court judge concerning the accident and its consequences, we briefly recite those portions of the municipal court proceedings to provide the necessary context.
The municipal court judge stated that his knowledge of the case stemmed from what he "read in the newspaper, like any other citizen sitting out there." Further, he stated, "I will be honest with you. I was kind of shocked that only two tickets were issued." Although defendant offered to enter a guilty plea to the charges without the benefit of any plea bargain, the municipal court judge requested the information that the State provided to defendant during discovery, and stated:
Okay, [defense counsel] has no objection that I am going to sit down and read all of the reports, okay? And based upon the reports, I will then make a determination what we are going to do. Whether the case has to be tried, or whether there is a plea bargain, or whatever it is, I will determine that after I have had an opportunity see the reports.
Additionally, the municipal court judge inappropriately characterized the careless driving accident as "someone was murdered."
Defendant entered a plea of guilty to the careless driving charge. After defendant gave a factual basis for her guilty plea, the municipal court judge stated, "I'm going to place on the record certain findings that I've determined based upon the reading of the record, which included police reports, [and] statements of the various witnesses." He found that the accident took place at 2:25 p.m.; defendant was "busily engaged on the [cell] phone," and on her cell phone "all the time." His findings included a detailed description of the accident, not grounded on defendant's factual basis, but presumably gleaned from his own review of the discovery materials and the newspapers. The municipal court judge's findings with regard to the time of the accident, defendant's cell phone use, and most of the description of the events were not supported by defendant's plea allocution or evidential cell phone records.
The municipal court judge referenced the principles elucidated in State v. Moran, 202 N.J. 311, 997 A.2d 210 (2010), as guiding his imposition of sentence; however, he failed to follow those principles, stating "Someone has to realize that they have to pay ... for the consequences of their actions."
Defendant argues these comments wrongfully impacted the record when reviewed by the Law Division during her municipal appeal. Despite the inappropriate and unnecessary comments by the municipal court judge when entering sentence, we disagree with defendant's assertion *1026 that the record discloses actual bias on the part of the Law Division.
Prior to the Law Division sentencing, the parties and the court engaged in an extensive colloquy concerning the principles that should guide the court in imposing sentence. The parties discussed, in addition to Moran, State v. Henry, 418 N.J.Super. 481, 14 A.3d 750 (Law Div. 2010), a case which was decided subsequent to the municipal court action. The record is clear that the Law Division judge was thoroughly conversant with both Moran and Henry. In imposing sentence, the judge was not only guided by the Moran principles, but also the Criminal Code for sentencing of offenses and crimes, N.J.S.A. 2C:44-1(a) and (b), as suggested in Henry.
In Henry, supra, a custodial sentence was imposed for defendant's third conviction for driving under the influence (DUI), N.J.S.A. 39:4-50.[4] 418 N.J.Super. at 485, 14 A.3d 750. The judge concluded that he "should apply, with appropriate tailoring, the aggravating and mitigating factors prescribed by the Criminal Code for sentencing of offenses and crimes, N.J.S.A. 2C:44-1." Id. at 488-89, 14 A.3d 750. The judge determined that those "factors are not mandated, [but] they provide appropriate guides for the court's exercise of discretion."[5]Id. at 489, 14 A.3d 750.
Here, the judge, based on a deficient municipal court record, attempted to apply both the Moran principles and the Criminal Code for sentencing. Consequently, we conclude a remand is necessary to fully develop facts necessary to properly determine the appropriate sentence for this careless driving violation.
Defendant was sentenced for the motor vehicle violation of careless driving, a much less serious offense than the DUI in Henry or the reckless driving in Moran. Motor vehicle violations, such as careless driving, are not "crimes," but rather petty offenses. See State v. Hammond, 118 N.J. 306, 311-12, 571 A.2d 942 (1990) (reasoning that motor vehicle violations, including DUI violations, constitute only "petty offenses" and thus are distinct from violations intended to constitute "offenses" under the New Jersey Code of Criminal Justice); see also State v. Schreiber, 122 N.J. 579, 585, 585 A.2d 945 (1991) (noting that disorderly person offenses and motor vehicle violations, "though both petty offenses and not crimes, are distinct" and have been since 1921); State v. Macuk, 57 N.J. 1, 9, 268 A.2d 1 (1970) (observing that "motor vehicle violations are not `crimes' in this state, but only petty offenses").
The Court's decision in Moran provided the foundation for judicial discretion in guiding whether to impose a license suspension, N.J.S.A. 39:5-31, in cases of reckless driving, N.J.S.A. 39:4-96. Supra, 202 N.J. at 324, 997 A.2d 210. In Moran, the Supreme Court directed municipal court and Law Division judges to consider the following factors in determining whether to impose a license suspension, and, if suspension is warranted, the length of the suspension:
[T]he nature and circumstances of the defendant's conduct, including whether the conduct posed a high risk of danger to the public or caused physical harm or property damage; the defendant's driving record, including the defendant's age *1027 and length of time as a licensed driver, and the number, seriousness, and frequency of prior infractions; whether the defendant was infraction-free for a substantial period before the most recent violation or whether the nature and extent of the defendant's driving record indicates that there is a substantial risk that he or she will commit another violation; whether the character and attitude of the defendant indicate that he or she is likely or unlikely to commit another violation; whether the defendant's conduct was the result of circumstances unlikely to recur; whether a license suspension would cause excessive hardship to the defendant and/or dependants; and the need for personal deterrence.... Any other relevant factor clearly identified by the court may be considered as well. It is not necessarily the number of factors that apply but the weight to be attributed to a factor or factors.
[Id. at 328-29, 997 A.2d 210.]
After analyzing the term "willful," the Court noted that the difference between reckless driving and a willful violation of the reckless driving statute "is a matter of degree," which distinction "will ensure that municipal court judges impose a license suspension only in reckless driving cases that present aggravating circumstances." Id. at 324, 997 A.2d 210. See also R. 7:9-1(c) (requiring in non-criminal code cases, the municipal court state its reasons for imposing or withholding a sentence of imprisonment, driver's license suspension, fines, or restitution). The Court determined that "the word `willful' bespeaks a deliberate or intentional disregard of the lives and property of others in the manner in which a driver operates a vehicle." Id. at 323, 997 A.2d 210 (emphasis omitted).
The Moran sentencing principles are equally apt in determining whether to impose a custodial sentence in this matter, which involves a conviction for careless driving. Reckless driving requires a "willful or wanton disregard of the rights or safety of others[,]" N.J.S.A. 39:4-96, whereas careless driving requires driving "carelessly, or without due caution and circumspection[,]" N.J.S.A. 39:4-97. However, both offenses require that the driving be "in a manner so as to endanger or be likely to endanger, a person or property...." State v. Dorko, 298 N.J.Super. 54, 60, 688 A.2d 1109 (App.Div.) (quoting N.J.S.A. 39:4-96; 39:4-97) (emphasis omitted), certif. denied, 150 N.J. 28, 695 A.2d 670 (1997). Just as the Court directed trial judges to examine the indicia of willful or wanton conduct in the determination of a license suspension in reckless driving sentencing, so too must the sentencing judge identify the behavior that constitutes driving carelessly, without due caution and circumspection.
Judges may only impose a license suspension or custodial sentence in careless driving cases that present aggravating circumstances. Those aggravating circumstances are to be gleaned from the evidential sources in the record, which shall be recited in the judge's factual findings. The judge must then undertake an appropriate weighing of the Moran principles based only on the evidential sources in the record. On resentencing, if the Law Division judge considers imposing a custodial sentence, keeping in mind that there was no evidence of defendant's cell phone use, the starting point must be whether there were any aggravating circumstances.
Additionally, the record upon which the Law Division judge imposed the de novo sentence was not sufficiently developed to enable him to apply the Moran principles properly. Central to the judge's sentencing decision was his analysis of the nature and circumstances of defendant's conduct *1028 "and the way this accident happened, and the potential for danger." The judge gleaned his factual underpinning from the municipal court judge's recitation of facts primarily derived from non-evidential sources. The municipal court record purportedly disclosed the defendant's driving history, but not the defendant's age and length of time as a licensed driver. The victim suffered the ultimate harm. However, the municipal court judge would not allow any discussion of the civil settlement, or entertain any facts relating to hardship to defendant or her dependents, which are to be considered when balancing relevant facts for municipal court sentences. In the absence of the necessary facts in the municipal court record, the Law Division judge should have conducted proceedings to make evidential findings weighing the character and attitude of the defendant as it relates to whether she is likely to commit another violation and any other relevant factors pertinent to sentencing. Before the maximum sentence for a motor vehicle violation is imposed, the court must undertake a thorough exploration of all facts impacting the analysis required by Moran. Of course, those facts must be gleaned only from the evidence and not other sources.
We remand to the Law Division for resentencing consistent with the Moran principles. The Law Division judge, in conducting further proceedings prior to imposing a de novo sentence, may supplement the record and admit additional testimony. R. 3:23-8(a).
In summary, the imposition of a custodial sentence requires a finding of aggravating circumstances evincing as "a matter of degree" more than mere carelessness. Moran, supra, 202 N.J. at 324, 997 A.2d 210. The tragic death of the victim, resulting from the violation is not, in and of itself, dispositive of whether a custodial sentence should be imposed. Rather, the court must review the evidence, balancing the factors delineated in Moran along with, "[a]ny other relevant factor clearly identified by the court[.]" Moran, supra, 202 N.J. at 329, 997 A.2d 210.
Reversed and remanded.
NOTES
[1] Defendant was also charged with failure to yield to a pedestrian in a crosswalk, N.J.S.A. 39:4-36, which was dismissed.
[2] The Law Division judge must give "due, although not necessarily controlling, regard to the opportunity of the magistrate to judge the credibility of the witnesses." State v. Johnson, 42 N.J. 146, 157, 199 A.2d 809 (1964). Here, the municipal court judge made no credibility findings, as he took no testimony other than defendant's factual basis for her plea of guilty.
[3] This will not be an issue on resentencing since the municipal court judge imposed the maximum custodial sentence. "A person violating a section of this article shall, for each violation, be subject to a fine of not less than $50.00 or more than $200.00, or imprisonment for a period not exceeding 15 days, or both, except as herein otherwise provided." N.J.S.A. 39:4-104.
[4] Police administered the Alcotest to Henry, which measured a .30 blood alcohol content.
[5] The municipal court sentenced Henry to sixty days in jail, but suspended thirty days conditioned on his performing thirty days of community service and completing forty-eight hours at the Intoxicated Driver Resource Center (IDRC). Henry, supra, 418 N.J.Super. at 485, 14 A.3d 750. The Law Division judge reduced the custodial sentence to fourteen days. Id. at 486, 14 A.3d 750.