**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4366-19

STATE OF NEW JERSEY,

  Plaintiff-Respondent,

v.

DANIEL GONZALEZ,

  Defendant-Appellant.

_____

    Submitted September 20, 2021 – Decided September 24, 2021

    Before Judges Fasciale and Vernoia.

    On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Municipal Appeal No. 18-2019.

    Galantucci & Patuto, attorneys for appellant (S. Emile Lisboa, IV, on the brief).

    Yolanda Ciccone, Middlesex County Prosecutor, attorney for respondent (Patrick F. Galdieri, II, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Following a de novo trial on an appeal from the Sayreville municipal court, the Law Division found defendant Daniel Gonzalez guilty of driving under the influence of an intoxicating liquor (DUI), N.J.S.A. 39:4-50, and sentenced defendant to a seven-month driver's license suspension and other fines and penalties. Defendant appeals from his conviction and sentence, arguing the court erred by denying his motion to suppress the results of Alcotest breath tests because the police lacked probable cause to arrest him for DUI. Defendant further claims the court erred by admitting the Alcotest results because the police did not administer the tests in accordance with the requirements established in State v. Chun, 194 N.J. 54 (2008). Defendant last argues the court erred by failing to sentence him in accordance with reduced penalties for DUI enacted after his arrest but prior to his conviction and sentencing. We find no merit to defendant's arguments and affirm.

I.

On August 8, 2017, Perth Amboy police arrested defendant and charged him with DUI and interference with traffic, N.J.S.A. 39:4-56. The police administered Alcotest breath tests that showed defendant had a blood alcohol content (BAC) of 0.12 percent. Defendant moved to suppress the Alcotest results, arguing they were obtained following an arrest for which there was no

probable cause. The municipal court conducted a hearing and heard testimony from Carlos Javier Delarosa, and Perth Amboy police officers Jarrod Reynolds and Rafael Bengochea, Jr. The court denied the suppression motion and held a trial on the offenses charged.[1]

The parties stipulated to the admission at trial of the testimony and evidence presented at the suppression hearing. In addition to that evidence, the State again called Officer Reynolds and it presented Perth Amboy police sergeant Emma Cabrera, who administered the Alcotest breath tests to defendant following his arrest. Defendant called Joseph Tafuni, who testified as an expert in the administration of field sobriety tests and the Alcotest breath tests.

In a decision from the bench, the municipal court found defendant guilty of DUI based on the Alcotest results and, separately, on the officers' and Delarosa's observations of defendant. The court later imposed sentence, and stayed the sentence pending defendant's appeal to the Law Division.

Following the trial de novo in the Law Division, Judge Robert J. Jones issued a detailed and thorough written decision. Based on the evidence

---

[1] The appendix and transcripts included in the record on appeal do not include the municipal court's decision denying defendant's suppression motion or an order denying the motion. The parties, however, agree the municipal court denied the motion.

presented and his credibility determinations, Judge Jones found that at about 2:25 a.m. on August 8, 2017, an individual, who the evidence established was Delarosa, called the Perth Amboy police department and reported he was behind a Dodge Durango at a red light, and the Durango had not moved even though the light had changed three or four times and he had been "honking his horn." Delarosa reported he pulled alongside the Durango and looked in its window. Delarosa told the police he feared the driver of the Durango "had suffered a heart attack."

Judge Jones found Officer Reynolds responded to the scene, looked inside the Durango and saw the driver, later identified as defendant, asleep and slumped over the wheel. The Durango was in gear, and defendant had his foot on the brake. Officer Reynolds tapped on the vehicle's window with a flashlight and used the flashlight's "strobe feature" in attempts to awaken defendant, who did not immediately respond. When defendant finally awoke, he lifted his foot from the brake, and the Durango lurched forward, almost striking Officer Reynolds's partner, who stood in front of the vehicle.

Judge Jones found defendant rolled down the window and attempted to open the driver's side door. At that time, Officer Reynolds detected a strong odor of alcohol, and Officer Reynolds observed defendant's flushed face and

4

watery eyes. The court noted that Officer Bengochea, who was also present at the scene, testified that he smelled alcohol emanating from defendant. The officers testified they observed defendant swaying as he exited the vehicle, and the court reviewed a video recording of the stop entered in evidence that showed "minor swaying" by defendant.

The court also noted defendant refused to perform the walk-and-turn and one-leg-stand field sobriety tests at the scene, claiming a leg injury precluded him from doing so. Officer Bengochea performed the horizontal gaze nystagmus (HGN) test, but he did not explain either how it was performed or what he observed when he performed it. Judge Jones stated he would not consider the test in his determinations of both probable cause for defendant's arrest and defendant's guilt or innocence.

The court, however, described Officer Bengochea's administration of the alphabet test, noting the officer asked defendant to recite a portion of the alphabet. The court found that based on its consideration of the testimony and a video recording of the test, defendant "failed to follow the instructions" given, and that Officer Bengochea viewed the failure as "show[ing] a lack of attentiveness."

A-4366-19

Judge Jones then summarized the evidence concerning the administration of the Alcotest breath tests at the police station following defendant's arrest. The court made detailed findings concerning the twenty-minute waiting period prior to administration of the tests, the officers' observations of defendant during the waiting period, and Sergeant Cabrera's administration of the tests.

Judge Jones further addressed, and rejected, defendant's claim the police did not have probable cause to arrest him for DUI. The court noted the police found defendant "inexplicably" "passed-out asleep at the wheel of his car while stopped at a traffic light," with "his foot on the brake" and his vehicle "in gear." The court further found the police could not wake defendant "even by tapping on the window with a flashlight and flashing a strobe in his face," and when he finally did awake, defendant almost ran over an officer who stood in front of his vehicle. The court also found that when it became clear defendant did not suffer a medical emergency, the police spoke to defendant and he "reeked of alcohol." The court concluded that "[t]h[o]se things, combined with [defendant's appearance], provided more than ample probable cause to arrest" defendant for DUI.

A-4366-19

The court found the same evidence supported a DUI conviction based on the observations of defendant. The court listed the following observations supporting its determination defendant was guilty of DUI:

> [Defendant] was found passed out at the wheel of his Durango at 2:25 a.m.
>
> There was no evidence that [defendant] suffered any type of medical emergency . . . .
>
> [Defendant] had been at the light for some time—long enough for [Delarosa] to call the police and for them to arrive at the scene.
>
> The light cycled several times and [defendant] still stayed there.
>
> After [Delarosa] honked his horn, [defendant] still did not wake up.
>
> [Defendant] also did not wake up after police tapped on the window and shined the strobe light on him.
>
> Upon awakening, [defendant] took his foot off the brake, causing the Durango to lurch forward and almost hit one of the officers.
>
> [Defendant] smelled of alcohol.
>
> [Defendant's] face was flushed, his eyes were watery, and he swayed slightly . . . getting out of his Durango.

A-4366-19

The court determined the listed observations provided "compelling" evidence defendant was intoxicated, and the court found beyond a reasonable doubt that defendant "drove drunk on the night [the] police arrested him."

The court also concluded the evidence established a per se violation of N.J.S.A. 39:4-50 because the Alcotest results showed defendant had a BAC of 0.12 percent. The court made detailed findings of fact concerning the process the police followed in the administration of the Alcotest breath tests, and the court found the credible evidence did not support defendant's claims the police failed to properly conduct the required twenty-minute observation period; the police failed to remove all electronic devices from the area in which the breath tests were conducted; and the Alcotest device failed to lock out for two minutes between each test. Judge Jones found "no merit in [defendant's] challenge to the reliability of the Alcotest results" and concluded the results established defendant's guilt under N.J.S.A. 39:4-50 beyond a reasonable doubt.

Judge Jones also rejected defendant's claim that a December 1, 2019 amendment to N.J.S.A. 39:4-50, which reduced some of the penalties for a DUI offense, applied to defendant's conviction. As the court explained, the amendment was enacted on August 23, 2019, became effective on December 1,

2019, and applied "to any offense occurring on or after that date."[2]  L.2019, c. 248, § 7, eff. Dec. 1, 2019.  The court determined the amendment did not apply to defendant because his offense occurred on August 8, 2017, prior to the amendment's plainly stated effective date.  Thus, the court sentenced defendant in accordance with "the statute as it existed when [defendant's] offense took place in 2017."

The court later imposed the same sentence as the municipal court, and stayed the sentence pending appeal.  This appeal followed.

## II.

In an appeal from a Law Division decision following a de novo trial on an appeal from a municipal court, we consider only the action of the Law Division and not that of the municipal court.  State v. Locurto, 157 N.J. 463, 470 (1999).  We do not "'weigh the evidence, assess the creditability of witnesses, or make conclusions about the evidence.'"  Id. at 472 (quoting State v. Barone, 147 N.J. 599, 615 (1997)).  "We are limited to determining whether the Law Division's de novo findings 'could reasonably have been reached on sufficient credible evidence presented in the record.'"  State v. Burkert, 444 N.J. Super. 591, 598

---

[2]  The amendment stated that it became effective "on the first day of the fourth month after enactment," which is December 1, 2019.  L. 2019, c. 248, § 7.

(App. Div. 2016) (quoting State v. Palma, 426 N.J. Super. 510, 514 (App. Div. 2012)); see also State v. Johnson, 42 N.J. 146, 162 (1964). The Law Division's legal conclusions and the legal consequences that flow from established facts are not entitled to special deference; they are reviewed de novo. State v. Goodwin, 224 N.J. 102, 110 (2016).

Defendant first claims the Law Division erred by not suppressing the Alcotest results obtained following his arrest because the officers did not have probable cause to arrest him. Defendant argues the officers lacked probable cause because: Officer Bengochea did not know how to properly evaluate certain field-sobriety tests, including the walk-and-turn test and the one-leg stand test; and the officers arrested him in part based on his performance on the HGN test, which defendant argues is "[j]unk [s]cience" and should not have been considered by the trial court "for [a]ny [p]urpose."[3] These arguments are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2). We offer only the following limited comments.

_____

[3] Officer Bengochea did not explain why defendant's performance on the HGN test caused him to conclude defendant was intoxicated. He testified only that it contributed to his recommendation to the other officers to arrest defendant for DUI.

Officer Bengochea's alleged lack of knowledge concerning the proper administration of the walk-and-turn and one-leg stand field sobriety tests does not undermine the court's probable cause finding. Officer Bengochea never administered those tests; he could not, and did not, offer any testimony concerning defendant's performance of the tests; and Judge Jones did not rely on those tests in determining there was probable cause for defendant's arrest.

Similarly, defendant's contention Officer Bengochea's administration of the HGN test did not support probable cause for defendant's arrest ignores that Judge Jones expressly stated he did not consider the administration of that test in his probable cause determination. Thus, the HGN test played no part in the court's finding there was probable cause to arrest defendant for DUI.

Moreover, Judge Jones's finding there was probable cause for defendant's arrest is amply supported by sufficient credible evidence. "In determining whether there was probable cause to make an arrest, a court must look to the totality of the circumstances and view those circumstances 'from the standpoint of an objectively reasonable police officer.'" State v. Basil, 202 N.J. 570, 585 (2010) (citations omitted). "Probable cause exists where the facts and circumstances within . . . [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a

[person] of reasonable caution in the belief that an offense has been or is being committed." State v. Moore, 181 N.J. 40, 46 (2004) (alterations in original) (quoting Schneider v. Simonini, 163 N.J. 336, 361 (2000)). "[A] showing of probable cause to arrest for DWI only require[s] proof by a fair preponderance of the evidence." Karins v. Atl. City, 152 N.J. 532, 559 (1998) (citations omitted).

"[E]vidence of slurred speech, loud and abrasive behavior, disheveled appearance, red and bloodshot eyes[,] and [a] strong odor of [an] alcoholic beverage on [a] defendant's breath [is] sufficient to sustain a conviction for DWI." State v. Cryan, 363 N.J. Super. 442, 455-56 (App. Div. 2003) (emphasis added); see also State v. Bealor, 187 N.J. 574, 588 (2006) (explaining "a conviction for [DUI] . . . will be sustained on proofs of the fact of intoxication— a defendant's demeanor and physical appearance—coupled with proofs as to the cause of intoxication—i.e., the smell of alcohol, an admission of the consumption of alcohol, or a lay opinion of alcohol intoxication"); id. at 588-89 (finding a DUI conviction may be sustained "based on [the] defendant's 'driving without his headlights on' and [a] police officer's observations of [the] defendant's 'strong odor of alcohol on [the] defendant's breath[,]' 'swaying as [the defendant] walked[,]' inability to perform physical coordination test, slurred

12                                                                    A-4366-19

speech, and combativeness" (quoting State v. Cleverley, 348 N.J. Super. 455, 465 (App. Div. 2002))); State v. Oliveri, 336 N.J. Super. 244, 251-52 (App. Div. 2001) (affirming a DWI conviction based on an officer's testimony the "defendant's eyes were watery and his speech slow and slurred"; the "[d]efendant staggered a little as he walked" and "had difficulty with his balance"; the defendant did not follow the officer's instructions in performing certain field sobriety tests, including the officer's instructions "to recite the alphabet from D to S," following which the "defendant went to V and 'missed several letters in between'"; and the officer "had to make 'a few' requests for [the] defendant to exit the vehicle before [the] defendant did so").

Judge Jones detailed the testimony and observations of the State's witnesses, and his findings need not be repeated here. It is sufficient to note "defendant's demeanor and physical appearance[,] . . . coupled with . . . the smell of alcohol . . . [and the officers'] opinion[s] of [defendant's] alcohol intoxication," established probable cause to arrest defendant for DUI in violation of N.J.S.A. 39:4-50. Bealor, 187 N.J. at 588; see also Cleverley, 348 N.J. Super. at 465.

We are further convinced that, for the same reasons, the witnesses' observations of defendant support the court's finding defendant is guilty of DUI

by operating his vehicle after consuming an amount of alcohol "which so affect[ed his] judgment or control . . . 'as to make it improper for him to driving on the highway.'" Cryan, 363 N.J. Super. at 455 (quoting Johnson, 42 N.J. at 165). We therefore affirm defendant's DUI conviction based on the witnesses' observations alone. See State v. Zeikel, 423 N.J. Super. 34, 48 (App. Div. 2011) (explaining DUI may be proven by showing either the defendant "operat[ed] a motor vehicle while under the influence of intoxicating liquor" or "operat[ed] a motor vehicle with a [BAC] of 0.08 [percent] or more" (quoting N.J.S.A. 39:4-50(a))).

As noted, the court separately determined defendant is guilty of a per se violation of N.J.S.A. 39:4-50 based on the Alcotest results showing defendant's BAC of 0.12 percent. See ibid. Defendant challenges the court's reliance on the Alcotest results, arguing the officers violated the requirements for admission of the results established in Chun by failing to: inspect defendant's mouth prior to administration of the breath tests; remove all electronics from the area in which Sergeant Cabrera administered the tests; and comply with what defendant contends is a "[two-]minute lockout" requirement between tests.

We reject defendant's claim an oral cavity search of a defendant was required prior to the administration of the Alcotest breath tests. The Court in

Chun did not condition the admissibility of Alcotest results on such a search. Rather, Chun requires only that an officer observe an arrestee during a twenty-minute period prior to the test "to ensure that no alcohol has entered the person's mouth while he or she is awaiting the start of the testing sequence." 194 N.J. at 79. The Court further held that if an arrestee "swallows anything or regurgitates, or if the operator notices chewing gum or tobacco in the person's mouth, the operator is required to begin counting the twenty-minute period anew." Ibid.; see also State v. Ugrovics, 410 N.J. Super. 482, 484-85 (App. Div. 2009) (noting admissibility of Alcotest results requires the State to establish only "that the test subject did not ingest, regurgitate[,] or place anything in his or her mouth that may compromise the reliability of the test results for a period of at least twenty minutes prior to the administration of the Alcotest").

The court considered Officer Reynolds's and Sergeant Cabrera's testimony concerning their observations of defendant during the twenty-minute period, and the court reviewed a video recording of the twenty-minute period. Judge Jones found no evidence defendant placed anything his mouth, or regurgitated, during that period. He also rejected the claim that defendant placed his hands in his mouth during the period, finding instead defendant only touched his face during the twenty minutes prior to the commencement of the administration of the

breath tests. We defer to those findings because they are supported by sufficient credible evidence. State v. Heisler, 422 N.J. Super. 399, 412 (App. Div. 2011). Those findings do not permit or require a determination the Alcotest results were inadmissible under the standards established in Chun.

Defendant also contends the Alcotest results were unreliable because Sergeant Cabrera failed to comply with a "two . . . minute lockout requirement" between tests. In the first instance, as Judge Jones correctly noted, Chun does not require a two-minute lock out of the Alcotest device between the administration of breath tests as a condition of establishing the reliability and admissibility of the Alcotest results. Indeed, defendant cites to no legal authority establishing such a requirement.

Additionally, in support of his contention, defendant relies on Tafuni's testimony interpreting an Alcotest Alcohol Influence Report that Tafuni claimed showed there was only one minute between defendant's breath tests. The court, however, considered Tafuni's testimony, conducted its own analysis of the report, and found Tafuni's testimony was in error because "the times Tafuni used" were not accurate. Based on its review of the entries in the report, the court found the first breath test ended at 4:18 a.m. and the second test did not begin until 4:21 a.m. Thus, the court determined that at least two minutes

16

elapsed between the tests, and it rejected defendant's claim to the contrary. Thus, even if <u>Chun</u> required a two-minute lockout of the Alcotest device between the breath tests, the evidence the court found credible establishes a lockout of at least two minutes occurred. We defer to the court's findings, <u>Heisler</u>, 422 N.J. Super. at 412, and discern no basis to reverse the court's admission of the Alcotest results in evidence. Those results—demonstrating a BAC of 0.12 percent—establish a per se violation of N.J.S.A. 39:4-50, and, independent of the witnesses' observations, support Judge Jones's determination defendant is guilty of DUI.

Defendant also argues the court erred by sentencing him in accordance with the version of N.J.S.A. 39:4-50 in effect on August 8, 2017, the day he was found slumped over the steering wheel of his vehicle, with a flushed face, watery eyes, and smelling of alcohol, while stopped at an intersection with his foot on the brake and the traffic signal repeatedly cycling through its lights. He argues he should have been afforded the option to select whether he was sentenced under the 2017 version of N.J.S.A. 39:4-50 or the amended version that became effective on December 1, 2019, following his arrest but before he was convicted in the Law Division.

On August 23, 2019, more than two years after defendant's arrest, the Legislature amended N.J.S.A. 39:4-50, in part, by eliminating the mandatory seven-month period of license forfeiture for a first-time DUI offender and instead providing that a first-time offender install an ignition interlock device on his or her vehicle. L. 2019, c. 248, § 2. The Legislature found that "[b]ecause a majority of drunk drivers, including first[-]time offenders, often continue to drive with suspended licenses, ignition interlock devices are more effective in deterring drunk driving than license suspension." L. 2019, c. 248, § 2. The Legislature determined the amendment would "take effect on the first day of the fourth month after [its] enactment and shall apply to any offense occurring on or after that date." L. 2019, c. 248, § 7 (emphasis added).

Our interpretation of the statutory amendment presents a legal issue we review de novo. MasTec Renewables Constr. Co., Inc. v. SunLight Gen. Mercer Solar, LLC, 462 N.J. Super. 297, 318 (App. Div. 2020). The principles governing our interpretation of statutes are well-settled. In re Kollman, 210 N.J. 557, 568 (2012). In our "interpretation of a statute[,] our overriding goal" is "to determine the Legislature's intent." In re Civ. Commitment of W.W., 245 N.J. 438, 448 (2021) (quoting Young v. Schering Corp., 141 N.J. 16, 25 (1995)); see also Kollman, 210 N.J. at 568. We "look to the statute's language and give those

terms their plain and ordinary meaning." W.W., 245 N.J. at 448 (quoting State v. J.V., 242 N.J. 432, 442 (2020)); see also DiProspero v. Penn, 183 N.J. 477, 492 (2005) ("[Courts] ascribe to the statutory words their ordinary meaning and significance [] and read them in context with related provisions so as to give sense to the legislation as a whole." (citations omitted)). "If the language is clear, . . . [our] job is complete." W.W., 245 N.J. at 449 (quoting In re Expungement Application of D.J.B., 216 N.J. 433, 440 (2014)); see also Johnson v. Roselle EZ Quick LLC, 226 N.J. 370, 386 (2016) ("If the plain language leads to a clear and unambiguous result, then our interpretative process is over." (quoting Richardson v. Bd. of Trs., Police & Firemen's Ret. Sys., 192 N.J. 189, 195 (2007))). However, "[w]hen [a] statut[e's] language is ambiguous and 'leads to more than one plausible interpretation,' [we] may resort to extrinsic sources, like legislative history and committee reports." MasTec Renewables, 462 N.J. Super. at 320 (quoting State v. Twiggs, 233 N.J. 513, 533 (2018)).

We find no ambiguity in the amendment's plain language. It expressly provides that its application is limited to "offense[s] occurring on or after" December 1, 2019. L. 2019, c. 248, § 7. Defendant committed the DUI offense on August 8, 2017, and he was charged in a summons with committing a DUI offense occurring on that date. Defendant's claim that an offense under the

amendment does not occur until a defendant's conviction is recorded on his or her Division of Motor Vehicle driver's abstract ignores the amendment's plain language, is untethered to any legal authority, and defies logic and common sense. We apply the statute's plain language and find defendant's offense occurred on August 8, 2017, as he sat in his vehicle at an intersection while under the influence of an intoxicating liquor. The court correctly rejected defendant's claim he should be sentenced under the amended statute because the amendment does not apply to offenses, like defendant's, that occurred prior to December 1, 2019.

Any remaining arguments made on defendant's behalf we have not expressly addressed are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed. We vacate the stay of defendant's sentence. We remand for the Law Division to take the steps necessary to implement its sentence.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION