997 A.2d 210
STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. LAURA MORAN, DEFENDANT–APPELLANT.

Argued April 27, 2010—Decided July 13, 2010.

312

*Jonathan H. Lomurro* and *Donald M. Lomurro* argued the cause for appellant (*Lomurro, Davison, Eastman & Munoz*, attorneys; *Donald M. Lomurro*, of counsel; *Jonathan H. Lomurro* and *Carrie A. Lumi* on the brief).

*Carey J. Huff*, Assistant Prosecutor, argued the cause for respondent (*Luis A. Valentin*, Monmouth County Prosecutor,

attorney;  *Patricia B. Quelch,* Assistant Prosecutor, on the letter brief).

Justice ALBIN delivered the opinion of the Court.

Defendant Laura Moran was found guilty in municipal court of reckless driving, a violation of *N.J.S.A.* 39:4–96.  In addition to imposing penalties specifically referenced in *N.J.S.A.* 39:4–96, the municipal court judge suspended defendant's driving privileges for forty-five days under *N.J.S.A.* 39:5–31.  The Superior Court, Law Division, in a trial de novo, upheld defendant's reckless-driving conviction and imposed the same sentence.  The Appellate Division affirmed and set forth standards for the imposition of license suspensions under *N.J.S.A.* 39:5–31 in future cases.  *State v. Moran,* 408 *N.J.Super.* 412, 432–33, 975 *A.*2d 480 (App.Div.2009).

*N.J.S.A.* 39:5–31 authorizes a municipal court or Law Division judge to "revoke the license of any person to drive a motor vehicle, when such person shall have been guilty of such willful violation of any of the provisions of [*N.J.S.A.* 39:1–1 to 39:5G–2] as shall, in the discretion of the [judge], justify such revocation." [1] Defendant claims that she did not receive "fair notice" that she was facing a potential license suspension "hidden" in *N.J.S.A.* 39:5–31.  She also challenges the constitutionality of *N.J.S.A.* 39:5–31, contending that the statute is vague and overbroad, and gives "unbridled discretion" to judges to impose a license suspension without any statutory limitation on the length of such a suspension.

We hold that the license-suspension provision of *N.J.S.A.* 39:5–31, which is published in the Motor Vehicle Code of the New Jersey Statutes Annotated, is not "hidden," and that defendant, like all motorists, is presumed to know the law.  To ensure that

---

[1] For purposes of *N.J.S.A.* 39:5–31, there is no meaningful distinction between revocation and suspension of driving privileges.  *See Moran, supra,* 408 *N.J.Super.* at 432 n.2, 975 *A.*2d 480; *cf. N.J.A.C.* 13:21–9.4(c) (including revocation and suspension in term "suspension of driving privilege" for purposes of license restoration).

license suspensions meted out pursuant to *N.J.S.A.* 39:5–31 are imposed in a reasonably fair and uniform manner, so that similarly situated defendants are treated similarly, today we define the term "willful violation" contained in *N.J.S.A.* 39:5–31 and enunciate sentencing standards to guide municipal court and Law Division judges. In setting these guidelines, we exercise our supervisory authority over our court system for the purpose of achieving just ends. *N.J. Const.* art. VI, § 2, ¶ 3; *State v. Romero,* 191 *N.J.* 59, 74–75, 922 *A.*2d 693 (2007). The procedural protections we put in place will obviate the constitutional concerns raised by defendant.

Based on the guidelines established in this opinion, we remand to the municipal court to consider anew whether to impose a suspension and, if so, the length of the suspension. We therefore reverse the judgment of the Appellate Division upholding the Law Division's forty-five-day suspension of defendant's driving privileges.

## I.

### A.

At her trial in the Aberdeen Municipal Court, defendant Laura Moran represented herself. The State called one witness, Officer Roger Peter of the Aberdeen Township Police Department, who testified to observations he made while parked in a patrol car near the intersection of Lloyd Road and Route 34, shortly before 2:00 a.m. on August 3, 2007. Stopped at a red light in the northbound lane of Route 34 were a tractor-trailer and, behind it, one other vehicle. Just as the light was turning green, defendant, driving a four-door sedan northbound on Route 34 in the left-turn-only lane, passed the two vehicles without making a left turn. Instead, defendant crossed the Lloyd Road intersection and cut in front of the tractor-trailer. But for the fortuity of the light turning green, it did not appear to the officer that defendant could have stopped for the red light.

Officer Peter then stopped defendant's car. From the outset, defendant was uncooperative. She repeatedly refused to hand over her license, registration, and insurance cards, to turn the ignition off, and to step out of the car. Eventually, with the assistance of a back-up officer, Officer Peter was able to open defendant's car door, and then she voluntarily exited the vehicle. Officer Peter determined that defendant was not intoxicated, and defendant permitted the officers to retrieve her documents from the car. Officer Peter then issued defendant summonses for reckless driving, *N.J.S.A.* 39:4–96, improper display of a license plate, *N.J.S.A.* 39:3–33, and obstruction of the windshield, *N.J.S.A.* 39:3–74.

Defendant took the stand, testifying that, on the evening in question, she "was not in a good mood, driving home [and] was pretty upset about things in [her] life." She stated that "[t]he reason why I went in front of the tractor trailer is because I wanted to get into that lane, I was in the other lane. That's why I went in front of it."

The court found defendant guilty of the three motor vehicle charges and imposed a $206 fine, $33 in costs, and a forty-five-day license suspension for reckless driving; a $36 fine and $33 in costs for the improperly displayed plate; and a $36 fine and $33 in costs for the obstructed windshield. During the proceedings, defendant was highly emotional, obstreperous, and disruptive. After the court rendered its decision, defendant responded, "I'm going home and I don't drive reckless. . . . I have a perfect driving record, I'm not taking [the ticket]."[2] Before sentencing defendant, the court reviewed defendant's history of numerous motor vehicle violations.[3] The court justified the imposition of a license suspension

---

[2] Defendant repeatedly refused to surrender her driver's license, as ordered by the court, and did not accede until threatened with contempt and arrest.

[3] At the time the municipal court reviewed defendant's history of moving violations, her driver's abstract revealed convictions for: improper passing in 1990, *N.J.S.A.* 39:4–85; failure to observe a traffic signal in 1991, *N.J.S.A* 39:4–

based on both defendant's driving in a "willful and wanton [manner] in violation of the rights and safety of others and [her]self" and her "demeanor" in court.

## B.

The Superior Court, Law Division, in a trial de novo on the record, found defendant guilty of reckless driving and imposed the same fines, costs, and forty-five-day license suspension meted out by the municipal court.[4] The Law Division found that defendant's willful violation of the reckless-driving statute, combined with her past driving infractions, justified the license suspension. At this proceeding, defendant had the services of appointed counsel and challenged the constitutionality of *N.J.S.A.* 39:5-31, which empowers the court to suspend a defendant's license. The Law Division rejected defendant's constitutional challenge that the statute invested municipal court judges with "unbridled discretion" and did not give fair notice of the penalty.[5]

## C.

The Appellate Division upheld the constitutionality of *N.J.S.A.* 39:5-31. *State v. Moran*, 408 *N.J.Super.* 412, 420-21, 975 *A.2d* 480 (App.Div.2009). The panel determined that the legislative and administrative development of the motor-vehicle-point system,

---

81; speeding in 1991, *N.J.S.A.* 39:4-98; failure to yield to a pedestrian in 1992, *N.J.S.A.* 39:4-36; obstructing passage of other vehicles in 1993, *N.J.S.A.* 39:4-67; speeding in 2000, *N.J.S.A.* 39:4-98; unsafe operation of a motor vehicle in 2003, *N.J.S.A.* 39:4-97.2; careless driving in 2003, *N.J.S.A.* 39:4-97; obstructing passage of other vehicles in 2005, *N.J.S.A.* 39:4-67; and unsafe operation of a motor vehicle in 2006, *N.J.S.A.* 39:4-97.2.

4 Defendant did not challenge the other motor vehicle convictions or the fines imposed. She also waived the argument that she should have been appointed counsel in municipal court.

5 At some point, defendant's license suspension was stayed pending appeal. By that time, her driving privileges had been suspended for approximately twenty days.

which allows for an administrative license suspension when a driver accumulates a specified number of points related to traffic violations, did not repeal by implication *N.J.S.A.* 39:5–31, which predated the promulgation of the point system. *Id.* at 422–24, 975 *A.2d* 480. The panel also found that defendant had "fair notice" of the potential of a driver's license suspension, as contained in *N.J.S.A.* 39:5–31, because the statute is a "published law of this State" and "[e]very person is conclusively presumed to know the law." *Id.* at 425, 975 *A.2d* 480 (citation and internal quotation marks omitted).

Additionally, the panel rejected defendant's arguments that the statutory language of *N.J.S.A.* 39:5–31 is constitutionally overbroad and vague. *Id.* at 427–29, 975 *A.2d* 480. The panel did "appreciate defendant's concern that no guidelines or standards are provided, nor is any limit set, in *N.J.S.A.* 39:5–31." *Id.* at 432, 975 *A.2d* 480. However, it concluded that arbitrary municipal court sentences could be corrected at a sentencing de novo in the Law Division and by the process of appellate review. *Ibid.* Although the panel found that the statute was not constitutionally infirm, it offered guidance to judges in exercising their discretion whether to suspend a license under *N.J.S.A.* 39:5–31 and, if so, the length of the suspension. *Id.* at 433, 975 *A.2d* 480. It directed judges to consider (1) the factors discussed in *Cresse v. Parsekian,* 81 *N.J.Super.* 536, 549, 196 *A.2d* 256 (App.Div.1963), *aff'd,* 43 *N.J.* 326, 204 *A.2d* 348 (1964); (2) relevant aggravating and mitigating factors in the Code of Criminal Justice, *N.J.S.A.* 2C:44–1(a) and (b), that could be tailored to motor vehicle offenses; and (3) "the length of suspensions authorized for specific offenses in the Motor Vehicle Code as a basis for comparison and proportionality." *Moran, supra,* 408 *N.J.Super.* at 433, 975 *A.2d* 480.

Applying those standards, the panel reviewed defendant's extensive history of driving infractions, the seriousness of the offense, and the need for deterrence and concluded that the forty-five day suspension constituted an appropriate exercise of discretion. *Id.* at 433–34, 975 *A.2d* 480.

D.

Defendant filed a petition for certification raising three challenges to the validity of *N.J.S.A.* 39:5–31. Defendant claims that the statute contains a "hidden" penalty provision that denied her fair notice of the potential sentence she was facing; the statute is "constitutionally vague or overbroad"; and the statute confers on judges "unbridled discretion to impose, without terms or limitation," a period of license suspension, in violation of the due-process guarantees of the Fourteenth Amendment to the United States Constitution and Article I, Paragraph 1 of the New Jersey Constitution. We granted certification. *State v. Moran*, 200 *N.J.* 547, 985 *A.*2d 645 (2009).

We now address each of those issues.

II.

We agree with the Appellate Division that defendant was on fair notice of the penalty provisions that flowed from a reckless-driving violation. *Moran, supra,* 408 *N.J.Super.* at 425, 975 *A.*2d 480. Ignorance of a sentencing provision that is published in the codified laws of this State—and available in bound volumes located in most law firms, in county and state offices, and in many other locales, and on-line—is not a defense. Every person is presumed to know the law. *Barlow v. United States*, 32 *U.S.* (7 *Pet.*) 404, 411, 8 *L.Ed.* 728, 731 (1833) (noting "common maxim, familiar to all minds, that ignorance of the law will not excuse any person, either civilly or criminally"). The claim that the penalty provision of *N.J.S.A.* 39:5–31 is "hidden" from reckless drivers is not supported by general legal principles or reality. Practitioners in our municipal courts are well aware of this statutory provision. *See* 25 *New Jersey Practice, Motor Vehicle Law and Practice* § 8:22, at 198 (Robert Ramsey) (4th ed. 2009) (noting that *N.J.S.A.* 39:5–31 is used in municipal courts); *State v. Dunn*, 45 *N.J.Super.* 224, 227–28, 132 *A.*2d 318 (App.Div.1957) (noting that in speeding case court may revoke driver's license when motorist is guilty of "willful violation" as set forth in *N.J.S.A.* 39:5–31);

*State v. Bookbinder,* 76 *N.J.Super.* 443, 445, 184 *A.*2d 869 (Cty.Ct. 1962) (same), *aff'd,* 82 *N.J.Super.* 179, 197 *A.*2d 35 (App.Div.1963).

The reckless-driving statute provides that a conviction for a first offense is punishable by a jail term not to exceed sixty days and/or a fine between $50 and $200. *N.J.S.A.* 39:4–96. Five points are also assessed against the defendant's driving record. *N.J.A.C.* 13:19–10.1.[6] Reckless driving, like many other offenses and violations defined in the New Jersey Statutes, is set forth in a particular statute that prescribes certain fixed penalties, but also is subject to a statutory provision that permits for a sentence enhancement. Oftentimes, a primary statute defining a violation or offense does not cross-reference a sentence-enhancement provision. Indeed, in the New Jersey Code of Criminal Justice, offenses defined in a particular statute do not necessarily cross-reference sentencing provisions found in other parts of the Code.[7] *Compare N.J.S.A.* 2C:11–1 to 2C:41–6.2 (Subtitle 2, "Definition of Specific Offenses"), *with N.J.S.A.* 2C:43–1 to 2C:45–4 (selected provisions of Subtitle 3, "Sentencing").

*N.J.S.A.* 39:5–31 authorizes the suspension of driving privileges for "such willful violation of any of the provisions of this subtitle." That statute is located in Chapter 5 of Title 39 ("Enforcement and Procedure") and is found in Subtitle 1, which encompasses all provisions from *N.J.S.A.* 39:1–1 to *N.J.S.A.* 39:5G–2. The sentencing-enhancement provision of *N.J.S.A.* 39:5–31 is in the Motor Vehicle Code, not secreted in statutory schemes dealing with

---

[6] The Chief Administrator of the Motor Vehicle Commission (MVC) is authorized to administratively suspend the license of a driver who accumulates a specified number of points in a certain time frame. *N.J.S.A.* 39:5–30.8; *see also N.J.A.C.* 13:19–10.2 (setting forth periods of suspension).

[7] For example, the robbery statute, *N.J.S.A.* 2C:15–1, does not cross-reference various potential sentencing enhancements. Aside from the general punishment provisions applicable to first- and second-degree crimes, *N.J.S.A.* 2C:43–6(a)(1)–(2), a person convicted of robbery is exposed to a period of eighty-five percent parole ineligibility, *N.J.S.A.* 2C:43–7.2(a), (d)(9), a minimum term of ten years if certain weapons were used during the offense, *N.J.S.A.* 2C:43–6(g), and an extended term, *N.J.S.A* 2C:43–7(a), 2C:44–3.

taxation, the environment, or elections. We therefore reject defendant's argument that she was not on "fair notice" of a potential license suspension for reckless driving.

### III.

We next turn to defendant's argument that *N.J.S.A.* 39:5–31 is "constitutionally vague or overbroad," therefore vesting in our municipal court and Law Division judges "unbridled discretion" to impose a period of license suspension without limitation. The State is not indifferent to defendant's claim and understands that *N.J.S.A.* 39:5–31, read literally, gives sweeping discretion to judges to impose license suspensions. The State asks this Court to construe *N.J.S.A.* 39:5–31 in a reasoned way—by enunciating standards channeling the discretion exercised by judges—that will render the statute constitutional.

### A.

To discern the meaning of a statute, we must begin by looking at its language. *N.J.S.A.* 39:5–31 provides:

> The director or any magistrate before whom any hearing under this subtitle is had may revoke the license of any person to drive a motor vehicle, when such person shall have been guilty of such willful violation of any of the provisions of this subtitle as shall, in the discretion of the magistrate, justify such revocation.[8]

The reckless-driving statute, *N.J.S.A.* 39:4–96, falls within the "subtitle" referenced by *N.J.S.A.* 39:5–31. Therefore, a driver who engages in a *"willful* violation" of the reckless-driving statute is subject to a license revocation if the violation "shall, in the discretion of the magistrate, justify such revocation." *N.J.S.A.* 39:5–31 (emphasis added). A person violates the reckless-driving statute when he or she "drives a vehicle heedlessly, in *willful* or wanton disregard of the rights or safety of others, in a manner so

_____

[8] The definition of magistrate includes judges of the municipal court and Superior Court. *N.J.S.A.* 39:1–1.

as to endanger, or be likely to endanger, a person or property." *N.J.S.A.* 39:4–96 (emphasis added).

Significantly, the term willful is used in both *N.J.S.A.* 39:4–96 and *N.J.S.A.* 39:5–31. The word "willful" is found in many provisions of the New Jersey Statutes Annotated. We must assign to that word its "generally accepted meaning, according to the approved usage of the language." *N.J.S.A.* 1:1–1; *DiProspero v. Penn,* 183 *N.J.* 477, 492, 874 *A.*2d 1039 (2005) ("We ascribe to the statutory words their ordinary meaning and significance. . . ."). Willful has been defined as "deliberate, voluntary, or intentional," *Webster's Unabridged Dictionary of the English Language* 2175 (2001), "but not necessarily malicious," *Black's Law Dictionary* 1737 (9th ed. 2009); *cf. N.J.S.A.* 2C:2–2(b)(1) (defining "purposely"). Statutory words must be read in context and in harmony with related provisions to give meaning to the legislation as a whole. *DiProspero, supra,* 183 *N.J.* at 492, 874 *A.*2d 1039.

When read in context with related provisions, the word willful conveys a different import in *N.J.S.A.* 39:4–96 and *N.J.S.A.* 39:5–31. In the reckless-driving statute, the word "willful" bespeaks a *deliberate* or *intentional* disregard of the lives and property of others in the manner in which a driver operates a vehicle. In *N.J.S.A.* 39:5–31, the term "willful" suggests a *deliberate* violation of certain motor-vehicle statutes. A willful violation of the reckless-driving statute necessarily involves a state of mind and conduct that exceed reckless driving itself. Thus, to trigger the license suspension provisions of *N.J.S.A.* 39:5–31, a driver must engage in an aggravated form of reckless driving.

The paradigm for distinguishing between reckless driving and a willful violation of the reckless-driving statute can be found in the New Jersey Code of Criminal Justice. A person who recklessly causes the death of another is guilty of manslaughter, *N.J.S.A.* 2C:11–4(b)(1), or vehicular homicide, *N.J.S.A.* 2C:11–5(a), whereas one who "recklessly causes death under circumstances manifesting extreme indifference to human life," *N.J.S.A.* 2C:11–4(a)(1), is

guilty of aggravated manslaughter.[9] Reckless manslaughter involves the possible risk of causing death, whereas aggravated manslaughter involves the probable risk of causing death. *See State v. Breakiron,* 108 *N.J.* 591, 605, 532 *A.2d* 199 (1987); *Model Jury Charges (Criminal),* Murder, Passion/Provocation and Aggravated/Reckless Manslaughter (May 2009).

Those concepts have resonance in distinguishing between the reckless-driving statute, *N.J.S.A.* 39:4–96, and a willful violation of that statute, *N.J.S.A.* 39:5–31. We perceive the following demarcation: reckless drivers act in a way "likely to endanger[ ] a person or property," *N.J.S.A.* 39:4–96, and those willfully violating the reckless-driving statute engage in conduct that is *highly* "likely to endanger[ ] a person or property," *see N.J.S.A.* 39:4–96, 39:5–31. Thus, the difference between reckless driving and a willful violation of the reckless-driving statute is a matter of degree. The distinctions we draw will ensure that municipal court judges invoke *N.J.S.A.* 39:5–31 only in reckless-driving cases that present aggravating circumstances.[10]

We have defined those circumstances that will warrant a judge invoking the license-suspension provision of *N.J.S.A.* 39:5–31. Now, we must give guidance to judges in determining whether to impose a suspension for a willful violation of a motor vehicle statute and, if so, the appropriate length of the suspension.

## B.

*N.J.S.A.* 39:5–31 grants a municipal court judge, for the willful violation of certain motor-vehicle statutes, the authority to revoke a motorist's driving privileges "as shall, in the discretion of

---

[9] Under the manslaughter provision of the Code, a person acts recklessly "when he consciously disregards a substantial and unjustifiable risk" that death will result from his conduct. *See N.J.S.A.* 2C:2–2(b)(3) (defining "recklessly"); *N.J.S.A.* 2C:11–4(b)(1).

[10] Here, we apply *N.J.S.A.* 39:5–31 to the reckless-driving statute. We do not address how *N.J.S.A.* 39:5–31 would apply to other motor vehicle statutes.

the magistrate, justify such revocation." The statute itself provides no standards or guidelines to channel the discretion of municipal court and Law Division judges who must determine whether to impose a license suspension for a "willful violation" of any of the applicable motor-vehicle statutes and, if so, for how long. Indeed, *N.J.S.A.* 39:5–31 places no limits on the outermost length of a license suspension that may be imposed.

We disagree with the Appellate Division in this case that the arbitrary application of a standardless sentencing provision will be less arbitrary when there are layers of appellate review. *Moran, supra,* 408 *N.J.Super.* at 432, 975 *A.*2d 480. The Law Division, if it finds a defendant guilty after a trial de novo from a municipal court conviction, is required to impose a new sentence. *R.* 3:23–8(e). Without guidelines, unbounded discretion exercised by a Law Division judge is no less a problem. Moreover, an appellate court—without guidelines or standards to apply—is hardly in a position to determine whether the municipal court or Law Division has abused its sentencing discretion.

However a license to drive is denominated, either as a right or a privilege, a license suspension may not be imposed arbitrarily. The loss of driving privileges for a reckless-driving conviction constitutes a consequence of magnitude that triggers certain rights, such as the right to counsel. *See Rodriguez v. Rosenblatt,* 58 *N.J.* 281, 294–95, 277 *A.*2d 216 (1971); *R.* 7:3–2(b); Guidelines for Determination of Consequence of Magnitude, Pressler, *Current N.J. Court Rules,* Appendix to Part VII to *R.* 7:3–2 at 2309 (2010); *see also State v. Hamm,* 121 *N.J.* 109, 124, 577 *A.*2d 1259 (1990) (eschewing "outworn distinction" whether driving is right or privilege), *cert. denied,* 499 *U.S.* 947, 111 *S.Ct.* 1413, 113 *L.Ed.*2d 466 (1991). The suspension of a driver's license is a consequence of magnitude because a license to drive in this State "is nearly a necessity," as it is the primary means that most people use to travel to work and carry out life's daily chores. *Hamm, supra,* 121 *N.J.* at 124, 577 *A.*2d 1259. No one would suggest that a court can take away one's driving privileges on a

whim or capriciously. Procedural safeguards apply to sentencing in our municipal courts and Superior Courts. *See, e.g., N.J.S.A.* 2C:43–2(e); *R.* 3:21–4; *R.* 7:9–1(b). The need for standards governing license suspensions touches on core constitutional principles.

Random and unpredictable sentencing is anathema to notions of due process. *See United States v. Batchelder,* 442 *U.S.* 114, 123, 99 *S.Ct.* 2198, 2204, 60 *L.Ed.*2d 755, 764 (1979) ("[V]ague sentencing provisions may pose constitutional questions if they do not state with sufficient clarity the consequences of violating a given criminal statute."); *New Jersey State Parole Bd. v. Byrne,* 93 *N.J.* 192, 210–12, 460 *A.2d* 103 (1983). Vague laws violate due process by failing to "provide adequate notice of their scope and sufficient guidance for their application." *See State v. Cameron,* 100 *N.J.* 586, 591, 498 *A.2d* 1217 (1985).

We have long recognized that "there can be no justice without a predictable degree of uniformity in sentencing." *State v. Hodge,* 95 *N.J.* 369, 379, 471 *A.2d* 389 (1984). Disparate sentencing undermines public confidence in the fairness of our justice system. Indeed, the dominant goal of the Code of Criminal Justice was uniformity in sentencing, *State v. Kromphold,* 162 *N.J.* 345, 352, 744 *A.2d* 640 (2000), replacing "the unfettered sentencing discretion of prior law with a structured discretion designed to foster less arbitrary and more equal sentences," *State v. Roth,* 95 *N.J.* 334, 345, 471 *A.2d* 370 (1984); *see also N.J.S.A.* 2C:1–2(b) (listing "general purposes of the provisions governing the sentencing of offenders," including "[t]o safeguard offenders against excessive, disproportionate or arbitrary punishment" and "[t]o give fair warning of the nature of the sentences that may be imposed on conviction of an offense").

This Court often has taken affirmative steps to ensure that sentencing and disposition procedures, whether authorized by statute or court rule, will not produce widely disparate results for similarly situated defendants. *See, e.g., State v. Brimage,* 153 *N.J.* 1, 22–25, 706 *A.2d* 1096 (1998) (ordering Attorney General to

promulgate plea offer guidelines to eliminate inter-county dispari-
ty in sentencing); *State v. Yarbough*, 100 *N.J.* 627, 643–44, 498
*A.*2d 1239 (1985) (adopting six criteria as general guidelines for
judges in determining whether to impose concurrent or consecu-
tive sentences), *cert. denied,* 475 *U.S.* 1014, 106 *S.Ct.* 1193, 89
*L.Ed.*2d 308 (1986), *superseded in part by N.J.S.A.* 2C:44–5; *State
v. Leonardis (Leonardis I )*, 71 *N.J.* 85, 97–98, 109, 363 *A.*2d 321
(1976) (requiring pretrial intervention programs be implemented
according to formal, uniform guidelines and instituting procedures
for judicial review to "alleviate existing suspicions about the
arbitrariness of given decisions"), *aff'd on reh'g, (Leonardis II )*,
73 *N.J.* 360, 388, 375 *A.*2d 607 (1977).

 *Cresse, supra,* 81 *N.J.Super.* at 548–49, 196 *A.*2d 256, dealt with
*N.J.S.A.* 39:5–30, a statute comparable to *N.J.S.A.* 39:5–31, and
addressed the power of the Director of the then-Division of Motor
Vehicles to impose administrative license suspensions for motor
vehicle infractions.[11] The case arose in the context of an automo-
bile accident that was purportedly caused by the defendant and
resulted in the death of a passenger in another car. *Id.* at 539,
196 *A.*2d 256. *N.J.S.A.* 39:5–30 did not place a limitation on the
length of the suspension that the Director could impose; nor did it
set standards to control the exercise of his authority. *Cresse,
supra,* 81 *N.J.Super.* at 548, 196 *A.*2d 256. The Appellate Division
enumerated a number of factors that the Director should consider
in determining whether to impose a license suspension for a motor
vehicle violation and, if so, for how long. *Id.* at 549, 196 *A.*2d
256.[12] We affirmed. *Cresse v. Parsekian,* 43 *N.J.* 326, 204 *A.*2d
348 (1964).

---

 [11] The New Jersey Motor Vehicle Commission is the successor agency to the
Division of Motor Vehicles. *N.J.S.A.* 39:2A–4; *L.* 2003, *c.* 13, § 4 (approved Jan.
28, 2003).

 [12] The Appellate Division directed the Director to consider the following
factors:

> the facts which constitute the particular violation; whether the motorist was
> willful or reckless, or merely negligent, and, if merely negligent, how

In *Cresse, supra,* the Appellate Division recognized that it would be impossible to evaluate whether the Director abused his discretion if no applicable standards governed his decision-making authority. 81 *N.J.Super.* at 548, 196 *A.*2d 256. The case is but one example in which our courts have superimposed standards on the exercise of authority, granted to a judge or other government official, to ensure compliance with tenets of due process or fundamental fairness, thus avoiding a constitutional challenge.

Article VI, Section 2, Paragraph 3 of the New Jersey Constitution provides that "[t]he Supreme Court shall make rules governing the administration of all courts in the State and, subject to the law, the practice and procedure in all such courts." To ensure uniformity in sentencing, and that defendants similarly situated are—to a reasonable degree—similarly treated, we draw on our constitutional powers, *N.J. Const.* art. VI, § 2, ¶ 3, to set standards for our municipal court and Law Division judges in exercising their discretion under *N.J.S.A.* 39:5-31. *Cf. State v. Broom–Smith,* 201 *N.J.* 229, 235-36, 989 *A.*2d 840 (2010) (exercising Court's constitutional supervisory authority to set standards for cross-assigning municipal court judges to other municipal courts). We essentially affirm the approach taken by the Appellate Division, which offered "guidance" by suggesting that municipal court and Law Division judges consider certain factors before imposing a license suspension. *Moran, supra,* 408 *N.J.Super.* at 433, 975 *A.*2d 480.

For ease of reference, we direct municipal court and Law Division judges to consider the following factors in determining whether to impose a license suspension under *N.J.S.A.* 39:5-31, and, if so, the length of the suspension: the nature and circum-

---

negligent; how long the motorist has been driving; whether this is his first offense; whether he has been involved in any accidents; his age and physical condition; whether there were any aggravating circumstances, such as drinking, or, on the other hand, whether there were extenuating circumstances.

[*Cresse, supra,* 81 *N.J.Super.* at 549, 196 *A.*2d 256.]

stances of the defendant's conduct, including whether the conduct posed a high risk of danger to the public or caused physical harm or property damage; the defendant's driving record, including the defendant's age and length of time as a licensed driver, and the number, seriousness, and frequency of prior infractions; whether the defendant was infraction-free for a substantial period before the most recent violation or whether the nature and extent of the defendant's driving record indicates that there is a substantial risk that he or she will commit another violation; whether the character and attitude of the defendant indicate that he or she is likely or unlikely to commit another violation; whether the defendant's conduct was the result of circumstances unlikely to recur; whether a license suspension would cause excessive hardship to the defendant and/or dependants; and the need for personal deterrence. *Cf. N.J.S.A.* 39:5–30c (enumerating factors to be considered by MVC in determining appropriateness of imposing maximum suspension of three years). Any other relevant factor clearly identified by the court may be considered as well. It is not necessarily the number of factors that apply but the weight to be attributed to a factor or factors.

Comparisons to motor vehicle statutes that impose mandatory license suspensions may also be a useful guide in some cases. For example, the assistant prosecutor who argued before this Court referenced the driving-while-intoxicated (DWI) statute, *N.J.S.A.* 39:4–50, which requires a license suspension between seven and twelve months for a first offense of driving with a blood alcohol level over .10 percent, *N.J.S.A.* 39:4–50(a)(1)(ii), to suggest that a license suspension in this case greater than that permitted for a first-time DWI might be excessive. *See also N.J.S.A.* 39:5–30b (authorizing MVC to suspend license for no longer than three years if license suspended three times in three years). Of course, here the suspension imposed was forty-five days.

A municipal court or Superior Court judge must articulate the reasons for imposing a period of license suspension. *Cf. R.* 7:9–1(b) (requiring municipal court to state reasons for sentencing

in disorderly-person- and petty-disorderly-person-offense cases); *R.* 3:21–4(g) (requiring judges to state reasons for imposing sentence in criminal cases). Requiring a statement of reasons for suspending a license pursuant to *N.J.S.A.* 39:5–31, guided by the standards discussed above, will enhance appellate review and be a further safeguard against arbitrariness in sentencing. *Cf. State v. Miller,* 108 *N.J.* 112, 122, 527 *A.2d* 1362 (1987) (remanding for statement of reasons to facilitate appellate review).

## IV.

Having defined the meaning of a "willful violation" under *N.J.S.A.* 39:5–31 and having set standards that will guide the discretion of judges imposing license suspensions under that statute, we conclude that the statute is neither vague nor overbroad, nor does it give unbridled discretion to sentencing judges. However, we reverse the Appellate Division, which affirmed the Law Division's forty-five day suspension of defendant's driving privileges, because neither the parties nor the municipal court and Law Division had the benefit of our ruling in this case. In fairness to defendant, we remand to the municipal court for proceedings consistent with this opinion.

*For reversal and remandment*—Chief Justice RABNER and Justices LONG, LaVECCHIA, ALBIN, WALLACE, RIVERA-SOTO and HOENS—7.

*Opposed*—None.