**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0671-19

STATE OF NEW JERSEY,

 Plaintiff-Respondent,

v.

ARTHUR TIGGS,

 Defendant-Appellant.

_____

Submitted January 11, 2021 – Decided October 26, 2021

Before Judges Suter and Smith.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment No. 06-08-2644.

Joseph E. Krakora, Public Defender, attorney for appellant (Steven M. Gilson, Designated Counsel, on the brief).

Theodore N. Stephens, II, Acting Essex County Prosecutor, attorney for respondent (Lucille M. Rosano, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the briefs).

Appellant filed a pro se supplemental brief.

The opinion of the court was delivered by

SUTER, J.A.D.

In 2007, defendant Arthur Tiggs was convicted by a jury of the first-degree murder of Lance Pettiford and sentenced to a life-term with a sixty-three and three-quarters year period of parole ineligibility under the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2. Defendant appeals two orders. His motion for a new trial based on a claim of newly discovered evidence was denied after an evidentiary hearing involving one witness. Defendant also appeals the order denying his motion to correct an illegal sentence.

On appeal defendant raises one issue through his appellate attorney:

> BASED ON NEWLY DISCOVERED EVIDENCE PREDICATED UPON ALLEGED JUROR TAINT, THE LOWER COURT ERRED BY NOT PERMITTING THE JURORS TO BE INTERVIEWED.

In defendant's pro se brief, he raises three issues:

> POINT I
>
> DEFENDANT'S SENTENCE IS ILLEGAL AND UNCONSTITUTIONAL AND THEREFORE MUST BE SET ASIDE AND VACATED.
>
> POINT II
>
> DEFENDANT['S] SENTENCE IS GROSSLY DISPROPORTIONATE AND THEREFORE IN

2

VIOLATION OF THE UNITED STATES CONSTITUTION THUS DEFENDANT['S] SENTENCE IS ILLEGAL IN NATURE AND MUST BE CORRECTED.

POINT III

DEFENDANT SEEKS TO PRESENT EVIDENCE OF HIS REHABILITATION IN SUPPORT OF HIS MOTION TO CORRECT AN ILLEGAL SENTENCE.

We have thoroughly considered defendant's arguments in light of the record and applicable standards. We are satisfied the motion judge correctly rejected defendant's motion for a new trial because none of the standards were met for a new trial nor was there good cause to interview jurors from the 2007 trial. The motion judge did not err by denying defendant's motion to correct an illegal sentence because it was not illegal, disparate or disproportional. We affirm.

I.

A.

We summarize the facts of this case from our prior opinion on defendant's direct appeal.

> Lance Pettiford was shot and killed shortly before 3:00 a.m. on April 9, 2006, outside the Cave Lounge on Halsey Street in Newark. Defendant was at the Cave to attend his own birthday party; he had arrived between 1:15 and 1:45 a.m.

The Cave is a bar owned by Vanessa and Charles Walker. El Raqib Poole, a/k/a Namiel, who is a friend of defendant's and worked for the Walkers, helped arrange the party. Not all of those present were guests; the Cave was also open for regular business. Vanessa Walker and her cousin, Cynthia Boggs, arrived before defendant, and Vanessa met him at the door and took his coat. Although there were two men stationed outside the entrance to check for weapons and identification, Vanessa did not know whether defendant was searched. Several others who were there said they had not been searched, including Poole; Boggs; Hodges Sears, who is a friend of the Walkers' son Brad; Sean Williams, a regular patron who arrived at about 2:00 a.m.; and Timothy Williams, who came with Sean Williams. Pettiford went into the Cave with Sean and Timothy Williams. There is no evidence of any disturbance, fight or altercation inside the Cave that night.

During the course of the party, defendant, Sears and Poole went outside to smoke. According to Sears, his companions shared a cigar filled with marijuana rather than tobacco. While they were smoking, Pettiford and Sean Williams left the Cave and crossed the street. Timothy Williams joined them and had a bottle of liquor.

According to Poole, Timothy Williams cursed at his group from across the street. Poole was not threatened, but he noticed that defendant seemed to be upset. Poole heard defendant say, "I had a vision that somebody — somebody got shot — I popped somebody for my birthday." He told defendant to think about his son and "leave it alone."

Sears heard defendant say he wanted to "push" somebody, which Sears understood to mean that

4

defendant wanted to shoot someone. Sears ignored the comment because he did not think defendant would do such a thing, but he also said that defendant was mildly intoxicated and appeared to have something on his mind.

Poole left. From his car he noticed defendant standing by the door of the Cave and did not see him with a gun. At 2:53 a.m., Sears went back into the Cave to find his girlfriend; defendant remained outside. After Sears found his girlfriend, they left the Cave and walked toward his truck. Defendant crossed the street.

Sean Williams, still outside with Timothy Williams and Pettiford, heard one loud pop in his left ear, turned around and saw Pettiford falling into Timothy's arms. Defendant ran past Sean. As defendant passed, Sean saw that he had a gun in his right hand.

Sears, still walking to his truck, also heard a gun shot. He turned and saw defendant running in the middle of the street, yelling something and holding a black "357 revolver" in his right hand.

Vanessa Walker and Boggs had left the Cave just before the shooting. Both women heard but did not see the shot fired. Boggs heard someone yell, "Oh my God. Lance got shot in the head"; she looked across the street and saw defendant with a gun in his hand, and she retreated into the Cave with Vanessa.

Videotapes from the Cave's four surveillance cameras were retrieved by the police who responded to the scene. The tapes from the camera mounted outside depicted some of the comings and goings of the patrons described above, including defendant's crossing the street just prior to the shooting. The shooting was not captured by the camera.

5

[State v. Tiggs (Tiggs I), No. A-2440-07 (App. Div. July 13, 2010) (slip op. at 2-5).]

B.

On August 25, 2006, defendant was charged under indictment 2006-8-2644 with first-degree murder, N.J.S.A. 2C:11-3(a)(1) and (2) (Count One); third-degree unlawful possession of a firearm, a handgun, N.J.S.A. 2C:39-5(b) (Count Two); and second-degree possession of a firearm, a handgun, for an unlawful purpose, N.J.S.A. 2C:39-4(a) (Count Three). He was convicted by a jury on all counts on June 18, 2007. Defendant was sentenced on August 17, 2007, to a life-term on the murder count with a parole disqualifier of sixty-three and three quarters years pursuant to NERA. The court merged Count Three into the murder conviction and imposed a concurrent five-year term on Count Two.

On July 13, 2010, we reversed defendant's conviction on Count Two, but affirmed on Counts One and Three. Tiggs I, slip op. at 2, 18. We also affirmed defendant's sentence, which he had challenged as excessive. Ibid. We remanded to the trial court for the entry of an amended judgment of conviction. Ibid. Defendant's petition for certification was denied. State v. Tiggs, 205 N.J. 77 (2010).

Defendant's petition for post-conviction relief (PCR), alleging ineffective assistance of counsel, was denied by the trial court on June 1, 2012. On June

6

19, 2014, we affirmed the PCR denial.  State v. Tiggs (Tiggs II), No. A-1041-12 (App. Div. June 19, 2014) (slip op. at 4, 11).  The Supreme Court denied defendant's petition for certification.  State v. Tiggs, 220 N.J. 100 (2014).

Relevant here, defendant filed a motion for a new trial in June 2018, based upon newly discovered evidence involving one of the jurors.  The court heard oral argument on the motion, ordering that Frank Prather, an inmate, testify about his knowledge.  Defendant filed another motion in January 2019, to correct an illegal sentence.  In March 2019, Frank Prather testified regarding the allegation about juror taint.  On March 15, 2019, the trial court issued two orders denying defendant's motions.  Defendant appealed, and in February 2020, we granted a limited remand for the trial court to issue findings on the motions under Rule 1:7-4(a).  On March 13, 2020, the trial court issued a written opinion denying both orders, and defendant filed an amended notice of appeal.

II.

A.

Defendant argues the trial court erred by denying his motion for a new trial based on newly discovered evidence.  We disagree based on our review of the record.

7

A three-prong test must be satisfied for a defendant to "gain the relief of a new trial" based on newly discovered evidence. State v. Ways, 180 N.J. 171, 187 (2004).

> [D]efendant must show that the evidence is 1) material, and not "merely" cumulative, impeaching, or contradictory; 2) that the evidence was discovered after completion of the trial and was "not discoverable by reasonable diligence beforehand"; and 3) that the evidence "would probably change the jury's verdict if a new trial were granted."
>
> [Ibid. (quoting State v. Carter, 85 N.J. 300, 314 (1981)).]

All three prongs must be satisfied. Ibid. The Court cautioned that "[n]ewly discovered evidence must be reviewed with a certain degree of circumspection to ensure that it is not the product of fabrication, and, if credible and material, is of sufficient weight that it would probably alter the outcome of the verdict in a new trial." Id. at 187-88 (citing State v. Buonadonna, 122 N.J. 22, 51 (1991)).

Under the first prong, the evidence must be "material" meaning it "would 'have some bearing on the claims being advanced.'" Id. at 188 (quoting State v. Henries, 306 N.J. Super. 512, 531 (App. Div. 1997)). Under the second prong, "the new evidence must have been discovered after completion of trial and must not have been discoverable earlier through the exercise of reasonable diligence." Id. at 192 (citing Carter, 85 N.J. at 314). This is to accord appropriate finality

8

to judgments and so that a defendant is not benefited by a "strategic decision to withhold evidence." Ibid. Finally, the third prong involves "whether the evidence is 'of the sort that would probably change the jury's verdict if a new trial were granted.'" Id. at 189 (quoting Carter, 85 N.J. at 314).

Defendant's certification in support of his motion for a new trial alleged he was approached by another inmate, Franklin Prather, who told him a female friend of his was a juror in defendant's case. Prather told defendant that his friend told Prather there was "some foul stuff" that happened with the jury in defendant's case. Prather's affidavit provided the same information. The trial court requested Prather's testimony.

Prather testified he met defendant at Trenton State Prison when defendant's job was taking pictures at the visiting hall. When Elsie Gonzalez visited Prather at the prison, she told him she recognized defendant because she was on his jury. Although Prather said "she didn't go into details . . . she told there was a lot of stuff going on in that jury. . . ." Prather testified Gonzalez said there was "funny things and foul play. She did say both." He testified he had been in prison for eleven years for "accomplice liability felony murder," serving a forty-year term subject to NERA. Although he knew Gonzalez well

even before he went to prison, he did not know she had served on a jury. He did not know if she had been a deliberating or alternate juror.

The trial court found Prather's testimony lacked credibility. In the court's written opinion, it found "[t]he information provided by [d]efendant . . . is not competent and does not satisfy the requirements for a finding of good cause as set forth in Rule 1:16-1."

We agree with the trial court that defendant did not satisfy any of the tests under Ways. The trial court found Prather's testimony was not credible. Although Prather and Gonzalez were friends before he went to prison, he was not aware she sat as a juror in this criminal trial. His testimony about what Gonzalez said to him was hearsay. Prather did not testify in detail about the "funny business" that allegedly occurred nor was this consistent with the record of the trial. The evidence did not meet the materiality threshold. We have no idea what was being referenced or how this would have a bearing on the outcome of the case. Without details that might affect the outcome of the verdict, the third prong is not satisfied.

The trial court correctly denied defendant's request to recall and interview the jurors post-verdict. Under Rule 1:16-1, there must be "good cause" for a court to permit a juror to be "interview[ed], examine[d] or question[ed]" about

10

"any matter related to the case" after the verdict has been rendered. After a jury has been discharged, interviewing a juror is an "extraordinary procedure" to be used "only upon a strong showing that a litigant may have been harmed by jury misconduct." Davis v. Husain, 220 N.J. 270, 279 (2014) (citations omitted). The issue is whether there was an "event or occurrence that injected into the deliberations in which the capacity for prejudice inheres." State v. Loftin, 146 N.J. 295, 381 (1996) (quoting Pressler & Verniero, Current N.J. Court Rules, cmt. 1 on R. 1:16-1 (1996)).

This strong showing was not met. These allegations were simply too indefinite to interview jurors from a criminal case conducted more than ten years ago. The record did not show the required good cause.

B.

Defendant contends his sentence is illegal. He argues there was unconstitutional disparity because similarly situated persons have received different sentences based on the ambiguity of the murder statute, N.J.S.A. 2C:11-3. He requests "full discovery" of all defendants convicted of murder and then an evidentiary hearing. Defendant also contends he should have been sentenced to a thirty-year period of parole ineligibility rather than the eighty-five percent period of parole ineligibility under NERA.

11

Whether a sentence is illegal is an issue of law that we review de novo. State v. Drake, 444 N.J. Super. 265, 271 (App. Div. 2016). "An illegal sentence that has not been completely served may be corrected at any time without impinging upon double-jeopardy principles." State v. Austin, 335 N.J. Super. 486, 494 (App. Div. 2000). Recently, our Supreme Court reiterated "[t]here are two categories of illegal sentences: those that exceed the penalties authorized for a particular offense, and those that are not authorized by law." State v. Hyland, 238 N.J. 135, 145 (2019) (citing State v. Schubert, 212 N.J. 295, 308 (2012)). These categories "have been 'defined narrowly.'" Ibid. (quoting State v. Murray, 162 N.J. 240, 246 (2000)). "[E]ven sentences that disregard controlling case law or rest on an abuse of discretion by the sentencing court are legal so long as they impose penalties authorized by statute for a particular offense and include a disposition that is authorized by law." Id. at 146. Under Rule 3:21-10(b), "an order may be entered at any time . . . correcting a sentence not authorized by law including the Code of Criminal Justice[.]"

Defendant was convicted of first-degree murder, N.J.S.A. 2C:11-3(a)(1), (2), and sentenced to a life term. Under NERA, certain offenses require a period of parole ineligibility that is eighty-five percent of the sentence. N.J.S.A. 2C:43-7.2(a). Murder is one of these offenses. N.J.S.A. 2C:43-7.2(d). A court

imposing a sentence for murder must follow NERA. Ibid. N.J.S.A. 2C:43-7.2(b) provides that "[s]olely for the purpose of calculating the minimum term of parole ineligibility pursuant to [NERA], a sentence of life imprisonment shall be deemed to be [seventy-five] years." Therefore, "[t]he minimum term applicable to a life sentence is [sixty-three and three-quarters] years." Cannel, New Jersey Criminal Code Annotated, cmt. 4 on N.J.S.A. 2C:11-3 (2021). Defendant's sentence was not illegal because it was authorized by statute and did not exceed the term authorized by law.

There was no requirement defendant receive a thirty-year period of parole ineligibility. After NERA was amended in 2001 to add murder to the offenses subject to NERA, "the court may set a maximum term between [thirty] years and life and then must set a minimum term of [eighty-five percent] of the term set or [thirty] years, whichever is longer." Ibid. This is consistent with N.J.S.A. 2C:11-3(b), which provides a defendant can be sentenced to "a specific term of years which shall be between [thirty] years and life imprisonment of which the person shall serve [thirty] years before being eligible for parole." See State v. Rambo, 401 N.J. Super. 506, 522 (App. Div. 2008) (providing that NERA "appl[ies] to the whole term imposed for murder, not just the period in excess of the mandatory thirty-year parole disqualifier which is required for any

sentence for murder"). There is no ambiguity in the statutes cited. Defendant was convicted in 2007 well after NERA was amended to include murder. See L. 2001, c. 129.

The record does not support defendant's claim his sentence was disparate. "Disparate sentencing undermines public confidence in the fairness of the justice system." State v. Moran, 202 N.J. 311, 326 (2010). However, the fact that defendant has a lengthy sentence does not mean it suffers from constitutional issues. Defendant takes no issue here with the court's weighing of aggravating and mitigating factors. He does not argue specifically how his sentence is disparate. Rather, defendant wants the court to compare the length of incarceration for all defendants sentenced for murder and determine how his sentence compares. This is a challenge to the length of his sentence not to an alleged disparity. An excessive sentence is distinct from an illegal sentence and not cognizable outside of the direct appeal. See State v. Acevedo, 205 N.J. 40, 47 (2011).

## C.

Defendant argues his sentence is cruel and unusual under the Eighth Amendment of the United States Constitution and under Article I, Paragraph 12, of the New Jersey Constitution. Defendant references his age when this crime

was committed as a basis to allege his sentence raises constitutional issues, citing Miller v. Alabama, 567 U.S. 460 (2012), and State v. Zuber, 227 N.J. 422 (2017), for support.

"In Miller, the Supreme Court declared that mandatory life imprisonment without parole imposed upon a juvenile sentenced as an adult violates the Eighth Amendment." State v. Tormasi, 466 N.J. Super. 51, 62 (App. Div. 2021). Zuber "extended the holding in Miller to juveniles who receive a 'lengthy, aggregate sentence that amounts to life without parole.'" Id. at 64 (quoting Zuber, 227 N.J. at 450).

Miller and Zuber apply to juvenile defendants, not to adult defendants. Defendant was twenty-one when the murder was committed and twenty-four when he was sentenced. He had been employed and had three children, one of whom resided with him. Tiggs I, slip op. at 12. There is no legal basis to treat defendant as if he were a juvenile. The new mitigating factor about defendants who are under age twenty-six was not added to the Criminal Code until October 2020, which was well after defendant's 2007 conviction. See N.J.S.A. 2C: 44-1(b)(14) (providing "[t]he defendant was under [twenty-six] years of age at the time of the commission of the offense."). Further, the aggravating and mitigating factors in N.J.S.A. 2C:44-1(a) and (b) are "part of the weighing

process, which relates to the issue of excessiveness, not legality." Tormasi, 466 N.J. Super. at 67.

We have already affirmed defendant's sentence. Tiggs I, slip op. at 18. We discern no error by the trial court in denying defendant's motion challenging the legality of his sentence.

D.

Defendant argues he is entitled to a new sentence based on his rehabilitation efforts. However, "defendant's sentence is not illegal because he now claims to be rehabilitated as a result of his incarceration." State v. Bass, 457 N.J. Super. 1, 14 (App. Div. 2018). Such issues are for the Parole Board when that avenue is available for defendant.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

16

A-0671-19