**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2027-18

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

WILLIAM FISH,
a/k/a WILLIAM J. FISH,

    Defendant-Appellant.

_____

Submitted November 4, 2021 – Decided January 12, 2022

Before Judges Whipple and Susswein.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Municipal Appeal No. 6215.

Matthew Lenza, attorney for appellant.

William A. Daniel, Union County Prosecutor, attorney for respondent (Michele C. Buckley, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant William Fish appeals from his convictions for reckless driving, N.J.S.A. 39:4-96, and operating an unregistered vehicle, N.J.S.A. 39:3-4. In April 2018, defendant was tried in municipal court and found guilty of both offenses by Judge Susan MacMullan. In a trial de novo on the record in the Law Division, Judge John M. Deitch also found defendant guilty of both offenses.

This matter arises from an incident in which two police officers observed defendant participating in a car race during which both vehicles were travelling in excess of seventy-five miles per hour on a residential street with a posted twenty-five mile-per-hour speed limit. Defendant contends the case should have been dismissed because the prosecutor failed to provide timely discovery. He also challenges the decision to suspend his driver's license for sixty days, claiming that Judge MacMullan and Judge Deitch both erred in concluding that his conduct was wanton and willful under N.J.S.A. 39:5-31. After carefully reviewing the record in view of the applicable legal principles, we reject these contentions and affirm the convictions and sentence substantially for the reasons set forth in Judge Deitch's thorough and thoughtful written opinion.

I.

We need only briefly summarize the relevant facts and the protracted procedural history. On August 14, 2016, Linden Police Department Detective

Maurice Rawlins and Officer Wojciech Dziadosz were patrolling the area in a marked police vehicle. They observed two cars speeding side by side on East Baltimore Avenue, which is a residential street with a posted twenty-five mile-per-hour speed limit. Rawlins and Dziadosz both estimated that the speeding cars were travelling in excess of seventy-five miles per hour. One of the vehicles was a Nissan that was operated by defendant. The other vehicle in the race was an Audi. The Audi was alongside defendant's vehicle travelling north in the southbound lane.

The officers initiated a traffic stop of both vehicles. The Audi, which was travelling on the left, cut in front of defendant's vehicle before coming to a halt.

During the ensuing investigative detention, the Audi driver told police she had mistakenly thought that her boyfriend—a friend of defendant—was in defendant's Nissan. She was arrested for an unrelated offense. Defendant during the stop "pretty much just remained . . . quiet. He didn't really say much about the incident." He did tell police that "at no time did he . . . feel he was in any type of harm." Defendant was issued a summons for reckless driving and for operating an unregistered vehicle.

On September 7, 2016, defendant appeared for arraignment before Judge MacMullan and entered a plea of not guilty. Defendant declined the assistance

3

of a public defender, instead electing to represent himself. He would later change his mind and was appointed counsel. On November 9, 2016, the matter was adjourned to allow defendant the opportunity to request discovery. Specifically, defendant intended to subpoena the arresting officer and make a written request for the recorded body camera footage associated with his arrest. When the court reconvened on February 22, 2017, defendant had not yet conveyed written discovery requests, necessitating another adjournment. In all, the case was relisted three times to allow defendant the opportunity to request discovery from the State, which defendant appears never to have done.

In addition, as Judge MacMullan noted in her oral opinion, defendant "chang[ed] his mind a couple of times" regarding whether to be represented by an attorney. Defendant appeared before the trial court with his first assigned counsel on April 19, 2017. Further adjournments followed. Judge MacMullan summarized the reasons for delay, noting that

> [d]efendant failed to appear on two occasions, thereby causing a delay on each occasion. . . . The remainder of the adjournments are attributable to the administration of the municipal court. There was a lack of communication and coordination here that led to the matter being listed before a conflicted judge, a conflicted prosecutor and a conflicted public defender on numerous occasions.

A-2027-18

Defendant was eventually tried before Judge MacMullan on April 11, 2018. The State presented testimony from Rawlins and Dziadosz. Defendant testified in his own defense. Judge MacMullan found defendant guilty of reckless driving, N.J.S.A. 39:4-96, and operating an unregistered motor vehicle, N.J.S.A. 39:3-4. The judge found Rawlins and Dziadosz to be credible and accorded "great weight" to their testimony. In contrast, Judge MacMullan found defendant's version of events to be "incredible." The judge did not "buy [defendant's account] for a second."

On the reckless driving conviction, Judge MacMullan sentenced defendant to a $200 fine, $33 in court costs, and a sixty-day period of driver's license suspension.[1] She imposed a $30 fine and $24 in court costs on the conviction for operating an unregistered vehicle.

Defendant appealed the convictions and sentence to the Law Division. On November 16, 2018, Judge Deitch issued a thorough and well-reasoned eighteen-page written opinion finding defendant guilty of both motor vehicle offenses and imposing the same sentence that had been imposed in municipal

---

[1] The license suspension was ordered to begin on April 11, 2018. Nothing in the record before us indicates whether the suspension was stayed pending the appeal to the Law Division or to the Appellate Division. We therefore do not know whether defendant has already served the sixty-day license suspension.

A-2027-18

court.  In doing so, Judge Deitch agreed with the witness credibility assessments and other findings of fact and law that had been made by Judge MacMullan. This appeal follows.

Defendant raises the following contentions for our consideration:[2]

POINT I

WHETHER THE MUNICIPAL COURT ERRED IN NOT DISMISSING THE COMPLAINT WHEN THE STATE FAILED TO TIMELY PROVIDE DISCOVERY AND TO BE READY FOR TRIAL.

POINT II

WHETHER THE MUNICIPAL COURT ABUSED ITS DISCRETION BY SUSPENDING THE DEFENDANT'S DRIVER'S LICENSE WHEN HIS ACTIONS DID NOT RISE TO THE LEVEL THAT WOULD MAKE IT WILLFUL AND WANTON.

II.

We begin our analysis by acknowledging that the scope of our review is narrow.  We review the trial court's determination of a motion to dismiss for a clear abuse of discretion.  State v. Aloi, 458 N.J. Super. 234, 238 (App. Div. 2019) (quoting State v. Ferguson, 455 N.J. Super. 56, 63 (App. Div. 2018)).

---

[2]  We note that the lawyer who was initially appointed as appellate counsel filed a Notice of Appeal but thereafter moved to be relieved.  The substitute appellate attorney failed to correct deficiencies in his brief.  Appellant's brief was finally marked "deficient/refused to cure."  Although the submitted brief was not formally accepted by the Clerk's Office for filing, we have read it and rely on it.

Furthermore, we "must uphold the factual findings underlying the trial court's decision, so long as those findings are 'supported by sufficient credible evidence in the record.'" State v. Evans, 235 N.J. 125, 133 (2018) (quoting State v. Elders, 192 N.J. 224, 243 (2007)). "An appellate court 'should give deference to those findings of the trial judge which are substantially influenced by his [or her] opportunity to hear and see the witnesses and to have the "feel" of the case, which a reviewing court cannot enjoy.'" Elders, 192 N.J. at 244. A trial judge's credibility determinations therefore should be upheld if they are supported by sufficient, credible evidence. State v. S.S., 229 N.J. 360, 374 (2017) (quoting State v. Gamble, 218 N.J. 412, 424 (2014)).

Deference is especially appropriate when, as in this case, two judges have examined the facts and reached the same conclusion. As the Supreme Court made clear in State v. Locurto, "[u]nder the two-court rule, appellate courts ordinarily should not undertake to alter concurrent findings of facts and credibility determinations made by two lower courts absent a very obvious and exceptional showing of error." 157 N.J. 463, 474 (1999) (citing Midler v. Heinowitz, 10 N.J. 123, 128–29 (1952)). Therefore, our review of the factual and credibility findings of the municipal court and the Law Division "'is exceedingly narrow.'" State v. Reece, 222 N.J. 154, 167 (2015)

(quoting Locurto, 157 N.J. at 470); see also Meshinsky v. Nicholas Yacht Sales, Inc., 110 N.J. 464, 475 (1988) (quoting Rova Farms Resort v. Inv'rs Ins. Co. of Am., 65 N.J. 474, 483–84 (1974)) (observing that appellate courts defer to the Law Division's credibility findings that were not "wholly unsupportable as to result in a denial of justice"). However, we are not bound by a trial court's interpretations of the legal consequences that flow from established facts. See Manalapan Realty L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995); State v. Harris, 457 N.J. Super. 34, 43–44 (App. Div. 2018).

## A.

We need only briefly address defendant's contention regarding discovery.[3] The crux of defendant's argument on appeal is that trial court should have granted his motion to dismiss because the State failed to turn over body worn camera and dash cam video recordings. Defendant contends, "due to the State's failure to provide any dash cam or body camera footage, or to find out if there was any, the matter should have been dismissed." The record fails to show that defendant ever made a proper request for the video recordings, despite numerous

---

[3] Defendant's argument to the Law Division regarding discovery was couched in terms of a speedy trial violation. Defendant has since abandoned that theory. Cf. Sklodowsky v. Lushis, 417 N.J. Super. 648, 657 (App. Div. 2011) ("An issue not briefed on appeal is deemed waived.").

adjournments for that purpose. But even putting that aside, the record clearly shows that the State did in fact produce the recordings, and that defendant acknowledged receipt. Specifically, on April 19, 2017, defendant told the court that he had received the body camera footage from the State but was waiting for the State to determine whether dash cam video existed. On January 24, 2018, defendant's counsel confirmed to the court that he had received both the dash camera and the body camera videos. In these circumstances, defendant's discovery contention lacks sufficient merit to warrant further discussion in this opinion. See R. 2:11-3(e)(2).

B.

We next turn to defendant's contention that there was no lawful basis upon which to suspend his driver's license. He contests Judge Deitch's finding that his conduct was willful and wanton, which is a prerequisite for the suspension of driving privileges under N.J.S.A. 39:5-31. We disagree and conclude that the findings made by Judges MacMullan and Deitch are amply supported by credible evidence in the record.

Defendant raises a factual challenge and a procedural challenge to the suspension of his driver's license. As to the factual challenge, he contends the officers who observed the reckless driving and who testified at trial were not

9

credible. He argues, as he did at trial, that he was speeding only because the Audi was chasing him. Judge MacMullan and Judge Deitch considered and rejected that defense theory, noting it was contradicted by the officers' testimony and was not credible. Applying the deferential standard of review under the "two-court" rule, we do not hesitate to conclude that the judges' credibility findings are amply supported by the record. See Locurto, 157 N.J. at 474.

Defendant also contends that both judges misapplied the Supreme Court's decision in State v. Moran, 202 N.J. 311 (2010). In that case, the Court noted that a defendant convicted of reckless driving is subject to a license suspension when he or she "drives a vehicle heedlessly, in a willful or wanton disregard of the rights or safety of others, in a manner so as to endanger, or be likely to endanger, a person or property." Id. at 322–23 (quoting N.J.S.A. 39:4-96). The Court explained that "[a] willful violation of the reckless-driving statute necessarily involves a state of mind and conduct that exceed reckless driving itself. Thus, to trigger the license suspension provisions of N.J.S.A. 39:5-31, a driver must engage in an aggravated form of reckless driving." Ibid.

The Court then provided an analytical framework to aid courts in determining whether reckless driving rises to the level of a willful and wanton violation, providing a non-exhaustive list of relevant factors:

(1) the nature and circumstances of the defendant's conduct, including whether the conduct posed a high risk of danger to the public or caused physical harm or property damage;

(2) the defendant's driving record, including the defendant's age and length of time as a licensed driver, and the number, seriousness, and frequency of prior infractions;

(3) whether the defendant was infraction-free for a substantial period before the most recent violation or whether the nature and extent of the defendant's driving record indicates that there is a substantial risk that he or she will commit another violation;

(4) whether the character and attitude of the defendant indicate that he or she is likely or unlikely to commit another violation;

(5) whether the defendant's conduct was the result of circumstances unlikely to recur;

(6) whether a license suspension would cause excessive hardship to the defendant and/or dependents; and

(7) the need for personal deterrence.

[Id. at 328–29.]

The Court noted that, "[i]t is not necessarily the number of factors that apply but the weight to be attributed to a factor or factors." Id. at 329. The Court added that, "[a] municipal court or Superior Court judge must articulate the reasons for imposing a period of license suspension[ ]" in order to "enhance

11

appellate review" and act as a "safeguard against arbitrariness in sentencing." Id. at 329–30 (citations omitted).

Our review of the record shows that both courts appropriately considered the Moran factors and carefully articulated the reasons for suspending defendant's driving privileges.[4] We note that Judge MacMullan stressed,

> [Defendant's conduct] is a heedless and willful and wanton disregard of the safety [of] others and . . . it was guaranteed that they would endanger anybody that happened to be walking down that street or riding their bike or [driving] their car down the road. They would have been killed . . . [Defendant] has a history of failure to comply . . . shows a blatant disregard for the safety of others, that this was a residential area and there was really just no excuse for this horrendous behavior.

Judge Deitch reached the same conclusion on de novo review, explaining:

> The facts of this case support a conviction for reckless driving. Defendant was driving in excess of at least 50 miles per hour and was driving side by side with another vehicle traveling in the wrong lane for at least a few blocks in a residential area. Furthermore,

---

[4] It appears that the only Moran factor the municipal court and Law Division judges did not expressly consider was the degree of hardship that license suspension would pose for defendant or his dependents. Because defendant offers no plausible argument on appeal with respect to this factor, we see no purpose in remanding for the Law Division judge to address this circumstance. We are satisfied that judges' analysis fulfilled the purpose underpinning the listing of relevant circumstances; the judges' thorough and well-articulated reasoning is sufficiently robust to "enhance appellate review and be a further safeguard against arbitrariness in sentencing." Moran, 202 N.J. at 330.

> Defendant apparently has a paralyzed right arm, thereby necessarily impairing his ability to control his vehicle. This Court finds that Defendant drive his vehicle 'heedlessly, in willful or wanton disregard of the rights or safety of others, in a manner so as to endanger, or be likely to endanger, a person or property.' N.J.S.A. 39:4-96.

We complete our analysis by recognizing that sentencing determinations are entitled to deference. State v. Fuentes, 217 N.J. 57, 70 (2014). Considering all relevant circumstances, we conclude a license suspension was entirely appropriate.

To the extent we have not addressed them, any remaining arguments raised by defendant lack sufficient merit to warrant discussion. R. 2:11-3(e)(2). As we have noted, it is unclear whether defendant's license suspension was stayed by reason of defendant's appeal to the Law Division or to us. See supra note 1. We remand this matter to the Law Division for the sole purpose of determining whether the court-ordered license suspension has been served. If not, the Law Division shall take all appropriate steps to ensure that the license suspension takes effect immediately. We do not retain jurisdiction.

Affirmed in part and remanded in part.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

13

A-2027-18